CURTIS & CO. MANUFACTURING COMPANY v. WILLIAMS.

SALES OF CHATTELS: *Warranty as to quality.*
  Ordinarily upon the sale of chattels the law implies no warranty of quality; but where a manufacturer undertakes to supply goods manufactured by himself, to be used for a particular purpose, and the vendee has not had the opportunity to inspect them, he necessarily trusts to the judgment and skill of the manufacturer, and it is implied in the contract that he shall furnish a merchantable article, reasonably fit for the purpose for which it is intended.

APPEAL from *Clay* Circuit Court.
Hon. W. H. CATE, Judge.

*F. G. Taylor,* for appellant.

The court erred in refusing to give instructions asked by defendant. A purchaser takes the risk of the quality of an article sold, unless there be fraud or warranty, and in the sale of chattels, while there is an implied warranty of title, there is none of quality. (*45 Ark., 284.*) Mere representation is not warranty, the relation of buyer and seller not being a confidential one. The representations are not alleged to have been made fraudulently, and there is no proof of even false representations. If made as alleged, they are not actionable. False representations must not only mislead, but must have been made fraudulently and with that intent. No one can be held liable for them who honestly believed them when made, however false they may be. He is liable if he knew them to be false, or knowing nothing about them, asserted them to be true. (*38 Ark., 334.*) The parties had mutual dealings for several months, and appellant rendered appellee a statement of account. No objection having been made in a reasonable time, the appellee cannot be heard to object at this late date. *41 Ark., 502.*

It was the duty of appellee to examine the goods when he received them at once. *45 Ark., 284.*

As to the representations, see *38 Ark., 352.*

*J. C. Hawthorne,* for appellee.

The bill of exceptions is a skeleton bill, and does not identify the instructions, and they will not be considered a part of the record. *45 Ark., 485; 46 ib., 482.*

Upon the sale of articles by the manufacturer there is an implied warranty that they will answer the purpose for which they were made. *31 Miss., 91; 4 Kan., 476; 29 Ind., 142; 29 Me., 508; 34 Conn., 67; 6 Am. Dec., 115.*

It was not necessary to demand a rescission of the contract; the purchaser may keep the property and set up the false warranty by way of recoupment. *22 Ark., 458.*

SMITH, J. The complaint alleges, in brief, that appellee, at the request of appellant, purchased from it a pair of trucks and eight tram-car wheels, manufactured by appellant. That appellant represented the same to be good, both in quality and workmanship, and that said truck and tram-car wheels were not good, both in quality and workmanship, but were defective and became useless to appellee, to his damage in the sum of one hundred and ten dollars.

The answer admits the sale of the trucks and tram-car wheels, but denies that appellant represented the same to be good, either in quality or workmanship, and also denies that the truck and tram-car wheels were defective, and alleges that appellee used the same several months, and did not make any complaint or notify the appellant of any defects. That appellant did not know that appellee claimed that any of the articles were defective until after suit was brought for the purchase money.

H. H. Williams, the plaintiff, in substance, testified : "In August, 1883, I commenced to correspond with appellant in reference to tram-car wheels and trucks. In October it shipped me a heavy pair of trucks, that were too heavy for the purpose for which I purchased them.

"An agent of appellant was down and informed me that they were getting up a new kind of tram-car wheels and trucks. I informed him of the kind I wanted, and upon the agent representing that they could fill the order, and that their machinery was adapted to use on my tram-road, I gave an order for a set of tram-car wheels for the axles that had been shipped with the heavy wheels ; also, gave

Curtis & Co. Mf'g. Co. v. Williams.

an order for three eight-wheel tram-car wheels and axles. In October, 1883, I received the goods and commenced to use the tram cars then soon. Sent truck wheels out to be used, and on learning that they were not in use, made an examination and tried to use them. The hubs were so irregular that in making a revolution they would run off the track. Had no way of making them smooth.

"In the fall I went to St. Louis, and advised appellant that I could not use the wheels, and that I would return them. Appellant said they would not be worth anything to it.

"About sixty days after I commenced to use the tram car, the wheels on the axles of one became loose. I tightened them up several times. It was on account of defect in pressing them on the axles that caused them to come off. I paid $140 for the eight wheels and four axles that came loose, and think their value was depreciated $80; that is, they were worth $80 less by reason of the defect. Paid $24 80 for the truck wheels that proved worthless. Gave my acceptance for the machinery, and renewed same two or three times.

"May 4, 1884, agent of appellant came down. I showed him defective car wheels and asked a set-off. Suit was commenced soon afterwards. I did intend to file a counter-claim, but had given two notes, and could not remember for certain which note included the purchase money of the defective machinery. The reason I did not ask at once to be allowed a credit for the defective machinery was that I was owing them a considerable bill, and supposed when we made final settlement they would allow me a proper credit.

"Was on good terms with appellant, and dealt with it to the extent of ten or twelve hundred dollars.

"The other two cars that I purchased, and paid $140 each, are good and I am yet using them."

John Sees testified: "I am a machinist; have seen the four truck wheels; they were worthless, except for old iron. It would cost $20 to grind the hubs smooth with a grind-rock, and $5 to make them smooth with machinery."

W. T. Griffith testified that the four light wheels were totally worthless to use on tram roads.

This was all of plaintiff's testimony.

For defendant—

John Stewart testified: "I am secretary of Curtis & Co. Manufacturing company, the defendant. In August, 1883, plaintiff bought of it ten sets of wheels and axles complete, for tram cars, for which he gave his acceptance, amounting to $490, due January 14, 1884. On maturity, we renewed this paper at his request, on promise of payment on March 17, 1884. At maturity plaintiff called on me and gave his note for three hundred dollars, and promised to pay balance on his return from Iowa in a few days. He failed to pay the balance or assign any reason; to accommodate him further, took his note for balance. Plaintiff failed to pay these notes on maturity. We instructed G. W. Brown to call on him for payment. We brought suit and recovered our money. In circuit court plaintiff filed counter-claim, but withdrew it. Had a great many meetings with plaintiff, and he never intimated any claim for damages or defects in any of the machinery sold him; neither was there any complaint in any of his correspondence. All of the business was done through me. Plaintiff expressed himself several times to be well satisfied, saying everything furnished him was first-class. Defendant did not know of any defects in any of the machinery sold plaintiff. Plaintiff bought goods at different times after the original sale. On February 29, 1884, he bought

the last article, and his account was closed, and he was rendered a statement, giving all the debits and credits."

The jury returned a verdict for $100. And the defendant moved for a new trial for misdirection, and because the verdict is not sustained by the law and the evidence. But his motion was denied.

CHATTEL SALES: Warranty as to quality.

The bill of exceptions shows that the court charged the jury, and also refused the defendant's prayers for directions. But as this charge and these prayers are not incorporated in the bill of exceptions, nor referred to with such certainty as to identify them as part of the record, we are relieved from inquiring into their correctness. The only question then, presuming the jury to have been properly charged, is whether the foregoing testimony warrants the the verdict that was given. Proof of an express warranty by the defendant, of the quality of this machinery, was not essential to a recovery. Ordinarily, upon sale of a chattel, the law implies no warranty of quality. But there are exceptions to the rule, as well established as the rule itself. One of these exceptions is where a manufacturer undertakes to supply goods manufactured by himself, to be used for a particular purpose, and the vendee has not had the opportunity to inspect the goods. In that case the vendee necessarily trusts to the judgment and skill of the manufacturer, and it is an implied term in the contract that he shall furnish a merchantable article, reasonably fit for the purpose for which it is intended. *Benjamin on Sales, secs. 645, 657, et seq.; 1 Parsons on Contracts, 586; Brown v. Edgington, 2 Man. & G., 279; Jones v. Just, L. R., 3 Q. B., 197; Harris v. Waite, 51 Vt., 481; S. C., 31 Am. Rep., 694; Rodgers v. Niles, 11 Ohio St., 48.*

From the testimony the jury might believe that the trucks and tram-car wheels were defective and ill-adapted to the buyer's road, with which road the defendant was

acquainted; and that reasonable notice of the defect was given accompanied by an offer to return them, which was declined. Affirmed.