S. F. Bowser & Company, Incorporated, *v.* Kilgore.

Opinion delivered July 3, 1911.

1. Sales of chattels—construction of contract.—A stipulation in a contract for the sale of a gasoline storage tank that if the tank should be damaged in transportation the seller would make it right without charge related to such defects only as might be caused by transportation, and not to defects that might have existed or that were caused in the manufacture of the tank. (Page 20.)

2. Same—warranty.—Where a manufacturer offers his goods for sale, and the vendee has no opportunity of inspection, the vendee necessarily relies upon his knowledge of his own manufacture; and in such case the law implies a warranty that the articles shall be merchantable and reasonably fit for the purpose for which it was intended. (Page 21.)

3. Same—breach of warranty—rights of vendee.—Where a manufacturer offered an article for sale, and after testing the article the vendee found that it was inherently defective and unsuited to his purposes, he was entitled to a rescission of the contract, and was not required to permit the vendor to replace the defective article with a sound article of the same kind. (Page 22.)

Appeal from Dallas Circuit Court; *Henry W. Wells,* Judge; affirmed.

*J. T. Richardson,* for appellant.

A contract is to be construed as a whole, and the different sections thereof referring to the same subject-matter are to be read together. 93 Ark. 497. The intention of the parties is to be gathered from the whole instrument. 53 Ark. 58, 65; 23 Ark. 582. Under the purchaser's agreement not to countermand, and the vendor's guaranty that the goods were as represented, and promise that, if for any reason the tank was defective or became so within one year, the vendor would "make it right" without charge and free of cost to the purchaser, it is obvious that the parties intended that if the tank did prove defective

appellant could repair it or substitute a new one.   This was all that was required of appellant, and the court erred in refusing to instruct the jury that if appellant offered to repair the tank or substitute a new one and appellee refused to permit it to do so, they should find for appellant.   20 L. R. A. (N. S.) 110; 35 Cyc. 604, note; *Id.* 171; *Id.* 137 (E); 24 Am. & Eng. Enc. of L. 119; 19 Enc. of Pl. Pr. 107 (H.); 119 Am. St. Rep. 956.

There having been no breach of warranty, the law permitting the rescission of contracts and return of goods for breach of warranty does not apply.   See Webster's Dictionary, "Breach"; 93 Ark. 454.

*Morton & Morton,* for appellee.

Appellant held itself out as competent to make a tank suitable for the uses for which it was being purchased.   Appellee did not rely upon his own judgment, but upon the skill and judgment of appellant.   The warranty was that the tank should be in perfect shape at the time of the sale, and also against damage in transportation.   The tank proved to be defective, which was a breach of the warranty, and the court correctly charged the jury that appellee had the right to rescind the contract and return the outfit.   48 Ark. 325; 53 Ark. 155; 72 Ark. 343; 73 Ark. 470; 77 Ark. 546; 81 Ark. 549; 83 Ark. 15; 90 Ark. 78; 102 Am. St. Rep. 615, monographic note; 110 U. S. 108; 28 L. Ed. 86.

Wood, J.   Appellant was engaged in the manufacture and sale of gasoline oil tanks, that are used as receptacles for storing gasoline.   They are put in use by burying them under the ground and allowing pipes to run from the tank to any part of the building that may be desired.   The tank is buried outside of the building or beneath it, and the oil is pumped through the pipe, and can be measured out a gallon at a time.   Appellee bought one of these tanks of appellant, agreeing to pay therefor the sum of $122 under a contract which contained the following clauses:

"It is agreed by the purchaser that this order shall not be countermanded.

"We guaranty all our goods as represented in our catalogue; and if in transportation they get damaged so that they do not work correctly, report to us, and we will make them

right without charge and free of cost to you.    Furthermore, we warrant them to remain in perfect order for one year from date of invoice."

The tank was delivered to appellee and duly installed by him.    It was found that the tank leaked, whereupon appellee wrote to appellant notifying it of that fact.    After some correspondence, appellant sent its agent to have the tank examined. The tank was found to be defective in that it permitted water to leak into the tank.    The appellant proposed to send appellee another tank, but appellee refused to receive another tank, giving as a reason therefor that the tank he had purchased was not fit for the uses for which he bought it.    Appellee testified on this point that several of his customers had sent back the oil sold to them, stating that it had water in it; that the leaking of the tank "like to have ruined his gasoline trade; that about a gallon of water seeped in every twenty-four hours."    He offered to return the tank, but refused to accept another tank in lieu of the one that proved to be defective.    The agent of the appellant himself testified that when they took the tank up and filled it with water so as to give it a thorough test they found that at about the thirty-gallon mark there was a slight leak.    The appellant proposed, after discovering the defective condition of the tank, to ship appellee a new tank free of charge, and also, if necessary, to allow for the expense of installing the same.    This proposition was not satisfactory to appellee. Appellant brought suit for the purchase price of the tank, $122.    The appellee answered, setting up that he had purchased the tank under the contract, two clauses of which have been set out above, and pleaded same in defense to the action. The court, after hearing the evidence, which developed substantially the above facts, instructed the jury as follows:

"The jury are instructed that by the terms of the contract the gasoline tank was expressly warranted to be in perfect order at the time of the sale for the purpose for which it was intended to be used, namely, the storage of gasoline for sale to customers and to so remain in perfect order for such purpose for a period of one year from April 13, 1910, the date of invoice; and if you believe from the evidence that said gasoline tank outfit was not in perfect order for such purpose at the time of sale or so became within one year from date of invoice under the con-

tract, then the defendant had a right to rescind the contract and return the outfit; and if you believe that he has rescinded the contract and returned the goods, or offered to return the outfit, you will find for the defendant."

Other instructions were given to which objection was made, but the above instruction presents the issue under which the cause was tried, and a verdict rendered for the appellee.

The only question here is: what were the respective rights of the vendor and vendee under the clauses of the contract which we have set forth?   It will be observed that the appellant warranted the tank to remain in perfect order for one year from the date of the invoice.   He also guaranteed that the tank would be as represented; that is, that the tank would be useful for the purpose for which it was designed.   The clause in the contract which permitted appellant to repair any defect that might be found in the tank and which permitted it to make "them right without charge and free of cost" related to such defects in the tank as were caused by transportation, and not to any defect that may have existed or that were caused in the manufacture of the tank.   Under the uncontroverted evidence, the jury were warranted in finding that the tank was not adapted to the purposes for which it was sold, and that there was a breach of warranty on the part of appellant that justified appellee in rescinding the contract and in returning or offering to return the tank, and that also justified him in refusing to accept another tank in lieu of the defective one. Appellee had no opportunity to inspect the tank before it was purchased.   He did not buy on his own judgment, but relied entirely upon the representations of the agent of appellant and the provisions contained in the contract that the tank would be reasonably fit for the purpose for which it was intended.   The rule governing cases of this kind has been frequently announced by this court.   In one of the most recent opinions we said:

"Where there is a contract for the sale of an article which is not at the time in existence or ascertained, or where there is a sale by sample, the agreement that such article shall be of a certain description or quality is not merely a warranty, but it is a condition upon the performance of which depends the completion of the contract of sale, and the sale does not become absolute until the article has been inspected and found

to conform to the description of kind or quality. The existence in such cases of the quality or kind of the article becomes essential to the identity of the article sold, and the purchaser cannot be required to accept and pay for an article which he in fact did not buy." *Gay Oil Co.* v. *Roach*, 93 Ark. 454.

In another recent case we said: "When a manufacturer offers his goods for sale, where the opportunity of inspection is not present before the purchase, the vendee necessarily relies on his knowledge of his own manufacture. In such cases the law implies a warranty that the articles shall be merchantable and reasonably fit for the purpose for which it was intended." *Main* v. *Dearing*, 73 Ark. 470. See, also, *Curtis & Co. Mfg. Co.* v. *Williams*, 48 Ark. 330; *Weed* v. *Dyer*, 53 Ark. 155; *Bunch* v. *Weil*, 72 Ark. 343; *Truschel* v. *Dean*, 77 Ark. 546; *Ward Furniture Mfg. Co.* v. *Isbell*, 81 Ark. 549; *Main* v. *El Dorado Dry Goods Co.*, 83 Ark. 15; *American Standard Jewelry Co.*, v. *Hill*, 90 Ark. 78.

This case, under the facts, comes well within the rule to the same effect as the above cases announced by the Supreme Court of the United States in *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108, 28 L. Ed. 86, as follows:

"When, therefore, the buyer has no opportunity to inspect the article, or when, from the situation, inspection is impracticable or useless, it is unreasonable to suppose that he bought on his own judgment, or that he did not rely on the judgment of the seller as to latent defects of which the latter, if he used due care, must have been informed during the process of manufacture. If the buyer relied, and under the circumstances had reason to rely, on the judgment of the seller, who was the manufacturer or maker of the article, the law implies a warranty that it is reasonably fit for the use for which it was designed, the seller at the time being informed of the purpose to devote it to that use."

In the recent case of *Gay Oil Co.* v. *Roach, supra,* the court said that "by the use of the stipulation of 'guaranty against leakage' it must have been in the contemplation of the parties that the barrels might leak, and in that event by this warranty the plaintiff undertook to pay to defendent all loss that he would suffer thereby." But under the warranty or condition clause of the contract under consideration it is manifest that it was not in

the contemplation of the parties that the tank might leak or that any defect whatever would exist that would render the tank unfit for the purposes for which it was manufactured and sold. It was in the contemplation of the parties that if any injury was caused to the tank by reason of transportation such defect might be corrected by the seller, but the uncontradicted proof shows that the defect complained of here was not produced in the transportation of the articles, but was an inherent defect in the tank caused by the failure to properly manufacture same. When such defect was discovered by the appellee, he had the right to insist that the contract of sale was not complete, that he did not get what the seller warranted he should receive, and therefore he was not liable. It was not incumbent on him under the evidence here to hazard his business by experimenting further with an article which had proved to be wholly unfit for the purposes he intended, and which had, according to his testimony, "well nigh ruined his business."

We are of the opinion that, under the undisputed facts of this case, the court would have been warranted in taking the case from the jury and instructing a verdict in favor of the appellee.

Affirmed.