MIDDLETOWN MACHINE COMPANY *v.* CHAFFIN.

Opinion delivered May 12, 1913.

1.  EVIDENCE—CONTRADICTING WRITTEN WARRANTY BY PAROL.—When a contract of sale contains a warranty in .writing that the engine shall develop a certain horsepower, and be constructed of good material, parol evidence is inadmissible to establish a verbal warranty in addition to that in the written instrument. (Page 260.)

2  EVIDENCE—CONTRACT IN WRITING—EVIDENCE OF VERBAL WARRANTY—
ADMISSIBILITY.—Where defendant purchased an engine from plain-
tiff under a written warranty as to quality, in an action for the
purchase price he can not prove an oral warranty that the engine
would run his machinery. Such a warranty must be embodied in
the written instrument. (Page 261.)

3.  SALE OF CHATTEL—WARRANTY OF QUALITY.—Upon the sale of chat-
tels the law implies no warranty of quality; that is left as a
matter of contract between the parties to the sale. (Page 261.)

Appeal from Columbia Circuit Court; *George W. Hays,* Judge; reversed.

### STATEMENT BY THE COURT.

The appellant sued the appellee on a promissory note for three hundred dollars ($300), executed for the balance of the purchase price of a gasoline engine, bought by the appellee from appellant, under a contract, which provides in part, as follows:

"10-25-1909.

"Mr. T. H. Chaffin, of Emerson:

"The Middletown Machine Company, hereby pro-pose to furnish and deliver f. o. b. cars, Middletown, Ohio.

State Quantity Here.    State H.-P. Here.    Type
      1                        15              K

Skids, Gravity and Tank Cooled Gasoline Miami Engine. Goods ordered on this contract to be shipped to T. H. Chaffin, at Emerson, via freight, about what date, at once.  *  *  *

### "Guarantee.

"The above engine will have been tested before ship-ment and shall develop its rated brake horsepower. We will furnish upon application a record test. We will re-place or repair, free of charge, f. o. b. factory, any faulty material or faulty workmanship within one year from date of invoice, provided faulty parts in question are sent for our inspection with express or freight charges prepaid. This guarantee does not cover any time or material expended by customer unless authorized in writing by the home office, Middletown, Ohio, nor does it

cover electric supplies which carry their own guarantee from the respective manufacturers thereof.''

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

''Prices and Terms.

''We propose to furnish the above engine and material for the sum of ($550.00) five hundred and fifty dollars, to be paid as follows: $250 upon shipment, $300 twelve months after shipment, with 7 per cent interest.

''All deferred payments to bear interest at the rate of 7 per cent per annum from date, and to be evidenced by note or acceptance.

''The above payments to be secured by note    \*    \*    \*

''Title and Conditions of Sale.

''It is agreed that the title and right of possession of the above described property, shall remain in the Middletown Machine Company until payment of the above amount has been made in full, and that if such payments are not made when due    \*    \*    \*    the Middletown Machine Company may take possession of said property and sell it, or give a ten days' notice of such sale by posting notices, and apply the proceeds of the sale to the expense of taking possession.    \*    \*    \*

''This contract is made in duplicate, and it is expressly understood that it is the only one in existence between the said parties, concerning matters herein stated, and there is no verbal understanding whatever changing or modifying it.    \*    \*    \*

''Proposed by W. W. McClellan, Salesman,

''For the Middletown Machine Company.

''Approved by J. W. H. Higbee, Sales Manager.

''Accepted by T. H. Chaffin, Purchaser.''

The appellant alleged that the note was due and unpaid, and asked for judgment for the amount thereof and also for the sale of the engine and fixtures to satisfy the same. The defense relied on by the appellee, was set up in his answer, as follows:

''He alleges that at the time that he purchased this engine he was operating a gin and grist mill near Emerson, Arkansas; that he was operating said gin and grist

mill with a steam engine; that the plaintiff manufactured the gasoline engine sold to this defendant, and that the plaintiff is engaged in the manufacture and sale of gasoline engines; that the agent of the said plaintiff, who sold him this engine, examined the machinery that this defendant was operating at the time and warranted to this defendant that this engine sold him would furnish power sufficient to operate said gin, together with the press, elevator and grist mill at the same time; that this defendant had had no experience with gasoline engines and at the time he purchased this engine from the plaintiff that he did not know the size engine to purchase to operate his machinery and that he relied wholly on the judgment of the plaintiff as to the size engine necessary to purchase in order to operate said machinery; that the said plaintiff warranted to this defendant that the engine sold to him would have sufficient power to operate his machinery, together with an additional gin stand. Said plaintiff set up said engine and placed it in operation according to the contract, but said engine does not furnish sufficient power to operate his machinery.

"That said engine, on account of some defect in the construction of same, leaks its power; that the engine hasn't sufficient power, and can not furnish sufficient power, even if it were in good condition, with which to operate the defendant's machinery as warranted by said plaintiff; that by reason of the breach of warranty on the part of the plaintiff, this defendant has sustained damages in the sum of five hundred dollars."

Appellee asked damages in the sum of five hundred dollars, for which he prayed judgment. Over the objections of appellant, the court permitted the appellee to testify "that a man by the name of McClellan, representing the appellant, came to the appellee's house and examined his machinery. He took appellee's order for the engine and after examining appellee's gin plant, grist mill, etc., he stated that the engine he was selling appellee, 'would pull the gin stand, elevator, grist mill and the press all at one time and not know that there was ever anything hitched to it.' "

Appellee had had no experience prior to that time with gasoline engines, and told McClellan that he wanted an engine that would operate the machinery which McClellan had examined, and McClellan represented that the engine he was selling would do it. Appellee relied upon this representation in making the purchase, etc.

Appellee further testified over the appellant's objection, that the appellant about the same time sold another engine of the same size and same kind as the one he purchased, to another man that lived at Haynesville; that appellee saw that engine operated and "it pulled a sawmill right straight along, and it did not check it." It took more power to pull sawmills than it took to pull appellee's machinery.

Appellee further testified that the value of the gasoline engine which he bought of appellant, as it now stands, was one hundred and fifty dollars.

The court, over the objection of the appellant, at the request of the appellee, gave the following instructions:

"You are instructed that if you find from a preponderance of the evidence that the plaintiff sold the defendant a gasoline engine, the note in controversy being executed for the purchase money thereof, and that the plaintiff sold said engine to the defendant for the purpose of operating a gin and grist mill, together with their attachments, then owned by the defendant, and that defendant relied upon plaintiff's judgment as to the kind of engine needed to operate this machinery, then the plaintiff impliedly warranted to the defendant that said engine was reasonably fit for the purpose for which it was sold, and if you find from a preponderance of the evidence that said engine was not reasonably fit for the purpose for which it was sold, then the plaintiff fails to comply with its contract of sale with the defendant, and the defendant is entitled to recover such damages as you may find from a preponderance of the evidence he has sustained."

Other evidence was adduced and instructions given over the objection of appellant, but the above show the theory upon which the cause was tried, and it is unneces-

sary for the purpose of the opinion to state more. The jury returned a verdict in favor of the appellee, and from a judgment in appellee's favor, this appeal has been duly prosecuted.

*Stevens & Stevens,* for appellant.

1. The contract was in writing and parol testimony to vary or contradict was not admissible. 65 C. C. A. 224; 141 U. S. 510; 80 Ark. 505; 95 *Id.* 131; 94 *Id.* 130.

2. There was no implied warranty that the article was fit for any specific work. 141 U. S. 510; 6 L. R. A. 392; 71 S. W. 1118; 24 C. C. A. 441.

3. Mere representation is not warranty. 45 Ark. 228; 38 *Id.* 351.

*C. W. McKay,* for appellee.

1. Warranties may be implied when the contract is in writing. 35 Cyc. 390-1, D. 1-3; 48 Ark. 325; 73 *Id.* 472. This is always true where goods are purchased for a specific purpose known to the seller. 35 Cyc. 397-9, 400-2, 408, 459; 77 S. W. 1011.

2. Damages on breach of warranty may be recovered. 95 Ark. 492; 81 *Id.* 549.

WOOD, J., (after stating the facts). The contract for the sale of the engine was in writing and contained an express warranty, as follows:

"The above engine will have been tested before shipment and shall develop its rated brake horsepower. We will furnish upon application a record test. We will replace or repair free of charge, f. o. b. factory, any faulty material or faulty workmanship, within one year from date of invoice."

There is no pretense that the appellant has failed to comply with this warranty; but the evidence which the appellee introduced over the objection of appellant, tended to show an entirely different warranty from that contained in the written contract. The testimony comes within the familiar rule, that "Parol evidence is inadmissible to vary, qualify or contradict, to add to or subtract from, the absolute terms of a valid and unambiguous contract," as held in *Delaney* v. *Jackson,* 95 Ark. 131.

The appellee does not allege in his answer, nor does the evidence adduced, tend to prove that appellant's agent made any intentionally false or misleading representa-- tion, by which appellee was induced to enter upon the contract. There is no pretense that the statements of McClellan to appellee were false and fraudulent—that is, made with the wilful intention of misleading appellee, to his prejudice, and the most that could be said of the statements of McClellan, as shown by the testimony, is, that they were expressions of his opinion as to the quality of the engine that appellant was proposing to sell, and that the results of the operation of the engine showed that he was mistaken in his judgment.

The defense of appellee was not based upon any tort of appellant's agent outside of the written contract. The effect of the oral testimony adduced by the appellee was to engraft upon the written contract, a warranty by parol, contradicting the terms of the written warranty. This can not be done. *Lower* v. *Hickman,* 80 Ark. 505. See also, *Bradley Gin Co.* v. *J. L. Means Machinery Co.,* 94 Ark. 130.

The general rule is, that upon the sale of chattels, the law implies no warranty of quality. That is left as a matter of contract between the parties to the sale. But as said in *Curtis & Co. Mfg. Co.* v. *Williams,* 48 Ark. 325: There are exceptions to the rule as well established as the rule itself. One of these exceptions is: "Where a manufacturer undertakes to supply goods manufactured by himself, to be used for a particular purpose, and the vendee has not had the opportunity to inspect the goods. In that case, the vendee necessarily trusts to the judg-- ment and skill of the manufacturer, and it is an implied term in the contract that he shall furnish a merchantable article, reasonably fit for the purpose for which it was intended." See also, *Weed* v. *Dyer,* 53 Ark. 155; *Bunch* v. *Weil,* 72 Ark. 343; *Main* v. *Dearing,* 73 Ark. 470.

Appellee relies upon the doctrine of these cases to sustain the instructions given by the trial court. But, under the facts of this record, the doctrine of the above cases is wholly inapplicable. Here the gasoline engine

was a merchantable article. It was manufactured for the purpose of running machinery, and there is no pretense that it was not fit for that particular purpose. The appellee contends, and his evidence tends to show that it · was not sufficient for the particular purpose for which appellee intended it, but there is no implied warranty that it should be adapted to run appellee's machinery in a manner satisfactory to him. This was a matter to be compassed by his contract and comes within the general rule above and not the exception. If appellee desired a warranty that the engine purchased would run his machinery, he should have seen that a provision to this effect was embodied in the written contract before he accepted the same.

The cause was tried upon an erroneous conception of the law and for the errors in admitting the evidence and giving the prayer objected to, the judgment is reversed and the cause is remanded, with direction to enter a judgment in favor of the appellant for three hundred dollars dollars ($300) with interest, and for the sale of the engine, unless the judgment is paid within a time to be fixed by the court.