HART COTTON MACHINE COMPANY *v.* SWEPSTON.

Opinion delivered October 14, 1918.

1. SALES—IMPLIED WARRANTY.—Where a manufacturer offers his goods for sale, and his vendee has no opportunity of inspection, the vendee necessarily relies upon his knowledge; and in such case the law implies a warranty that the article shall be merchantable and reasonably fit for the purpose for which it was intended.

2. SAME—BREACH OF WARRANTY—TENDER.—Where a vendee of machinery seeks to avoid liability for the purchase price of machinery upon the ground of a breach of warranty, he will be excused from making a tender of the machinery where the vendor's conduct manifested that he would not have accepted a return of the machinery if the defendant had offered to return it.

3. SAME—BREACH OF WARRANTY—INSTRUCTION.—In an action for the purchase money of certain machinery, where there was no dispute that the machinery failed to perform the use and service intended, an instruction which assumed that fact was not prejudicial.

Appeal from Crittenden Circuit Court; *W. J. Driver*, Judge; affirmed.

STATEMENT OF FACTS.

The Hart Cotton Machine Company sued W. W. Swepston for an amount alleged to be due on a note given as part payment of one Hart Cotton Huller and Separator and for an additional amount alleged to be due it for a fan to be used in the operation of said machinery. The defense was that the machinery was worthless, and

that there was an implied warranty of its fitness for the purpose for which it was intended. The facts are as follows:

The note and account sued on were introduced in evidence, and it was proved by the plaintiff that the note was given in part payment for one Hart Cotton Huller and Separator manufactured by the plaintiff and sold by it to the defendant. The account was for the purchase price of a fan to be used in connection with the operation of the above named machinery.

On the part of the defendant it was proved that the machinery was installed according to the specifications sent out by the plaintiff, and that it failed to do the work for which it was sold.

According to the testimony of Charley Margerum, he had been for twenty-five years the manager of the gin and saw mill of the defendant. He had set up machinery at different times, and had always set it up according to specifications, and had never before had any trouble. He set up the machinery in question according to the blue prints furnished by the plaintiff. The machine would crush cotton, hulls and all, but would not separate the hulls from the cotton, which it had been represented to do by the plaintiff.

Another witness for the defendant testified that he worked around the defendant's gin while the machinery in question was installed there, and that it would never do the work that it was intended to do; that it would choke up and never let a bale of cotton go through it; that the dirt would go through the machine all right, but the cotton would stop it up; that a representative of the plaintiff came there for the purpose of testing the machine; that he put in different pulleys and increased the speed of the engine, but that he never got it so that it would gin five hundred pounds of seed cotton before it would choke up.

On the part of the plaintiff, it was shown that the machine in question was manufactured by it, and that

several thousand of them were in successful operation in different parts of the country. A representative of the plaintiff went to the Swepston gin to see what was the matter with the machinery in question. He testified that the engine did not have speed enough; that he speeded it up to approximately a sufficiently high rate of speed, but that the speed could not be maintained; that the machine choked up because the engine did not maintain a sufficiently high velocity of speed to maintain a vacuum and draw the cotton into it from the cotton house; that the machine which was sold to the defendant was to be used in his gin plant to break up the boll cotton and to take the dirt and trash out of the cotton; that when this was done the cotton could be ginned by a huller gin such as was installed in Mr. Swepston's gin house; that the machine sold to Swepston was never intended to separate the hulls from the cotton, but that it was called a separator because it separated the dirt and trash from the lint; the machine was not made to separate bolls from the cotton, but that this was done by the huller gin; that the defendant is charged with the fan which he ordered from the plaintiff.

On the part of the defendant it was shown that the engine was speeded up to 130 revolutions per minute during the time the test of the machinery was made, and that this was the speed required by the specifications; that the machine would still choke up at this speed, and would not do the work for which it was intended.

The jury returned a verdict for the defendant, and from the judgment rendered the plaintiff has appealed:

*Richard M. Mann*, for appellant.

1. Appellant is certainly entitled under the testimony to recover the price of the fan, $90.

2. There is no testimony on the breach of warranty. No false representations were made.

3.   Appellee made no tender or offer to return.   110 Ark. 25; 72 *Id.* 343; 90 *Id.* 583.   The sale was an executed conditional sale and not a sale on approval.   82 Ark. 9.

4.   There is error in the instructions.   They assume as a fact that the machine failed to perform the service intended.   Plaintiff's No. 2 should have been given.   It was error to submit the issue of an implied warranty to the jury, but should have instructed for the plaintiff.

*Guy L. Smith,* for appellee.

1.   Appellant was not entitled to recover for the fan. The fan was not purchased, and appellee repudiated the whole contract and so notified appellant.

2.   The testimony shows conclusively that the machine would not operate—would choke up.

3.   It was not necessary to offer to return the machine.   It was held subject to appellant's order and it was notified. The law never requires a vain thing to be done. An offer to return was useless.   93 Ark. 502.   The machinery was worthless, and no offer to return was necessary.

4.   There is no error in the instructions.

HART, J., (after stating the facts).   This court has held that where a manufacturer offers his goods for sale, and his vendee has no opportunity of inspection, the vendee necessarily relies upon his knowledge of his own manufacture; and that in such case the law implies a warranty that the article shall be merchantable and reasonably fit for the purpose for which it was intended. *S. F. Bowser & Co.* v. *Kilgore,* 100 Ark. 17, and *Curtis & Co. Manufacturing Co.* v. *Williams,* 48 Ark. 325.   This principle of law is recognized by both parties in their briefs.

It is insisted, however, by counsel for the plaintiff that it has no application to the facts of this case.   He insists that the controversy arises in this case because of the different views held by the plaintiff and defendant as to the intended purpose of the machinery in controversy. He claims that it was never intended or represented by

the plaintiff that the machine of itself would separate the bolls from the cotton, but that it only represented that it would break the bolls so that the defendant's huller gin would make the separation. He further claims that the machine would break up the bolls as represented by the plaintiff when the engine was run at the high rate of speed required by the specifications. We do not think that the testimony as to these matters is undisputed as claimed. The manager of the defendant's gin and other machinery, who had had twenty-five years' experience in running machinery, testified that the engine would run at the rate of speed provided for in the specifications sent out by the plaintiff for installing and operating the machinery in question; that in testing the machinery he speeded up the engine to the required speed, and that when this was done it would choke up by the time five hundred pounds of seed cotton has passed through it. He further testified that the machinery was never operated two hours at a time until it would choke up. The case was submitted to the jury under the principles of law announced above and we think the testimony of the defendant just stated and referred to was sufficient to take the case to the jury.

It is next insisted that the judgment should be reversed because the defendant has never returned or offered to return the machinery involved in this controversy. The machinery was operated for some time in an effort to test its fitness for the purpose for which it was sold by the plaintiff to the defendant. A representative of the plaintiff went to the defendant's gin for the purpose of seeing if the machinery was properly installed and properly operated. After doing this the plaintiff wrote the defendant a letter telling him that it was not going to waste any more time or money on the matter and demanded prompt payment of the note. The law never requires a vain thing to be done. From this and other facts and circumstances adduced in evidence it is manifest that the plaintiff would not have accepted a return of the machinery if the defendant had offered to re-

turn it.  Under such circumstances the defendant was ex-
cused from offering to return the machinery. *Read's
Drug Store* v. *Hessig-Ellis Drug Co.,* 93 Ark. 497.

It is also insisted that plaintiff is certainly entitled
to recover upon the open account which is for the pur-
chase price of the fan shipped by it to the defendant.
This fan was installed by the plaintiff's agent in an effort
to successfully operate the machinery sold by plaintiff to
the defendant.  It was thought that the machinery could
be successfully operated if a larger fan was installed.
Plaintiff's agent installed the fan in an effort to success-
fully operate the machinery, but it was not purchased by
the defendant.  If the defendant had kept the machinery
and the fan with it, plaintiff's contention would be sound;
but the defendant repudiated the whole contract and so
notified the plaintiff.  The plaintiff contended that the
contract was binding upon the defendant, and elected to
hold him for the purchase price of the machinery.  As
above stated, under these circumstances it was not incum-
bent upon the defendant to offer to return the machinery
including the fan to the plaintiff.  Of course, it follows
from the views expressed in this opinion that the cotton
separator and the fan are the property of the plaintiff,
and that it would undoubtedly have the right to take pos-
session of them.  That matter, however, is not an issue
in the present case, and no order can be properly made
here for the restoration of the plaintiff's property to him.
This would be a proper subject matter for litigation in
another case if the defendant should refuse to restore the
property to the plaintiff upon demand therefor.

Finally, it is insisted that the court erred in instruct-
ing the jury as follows:

"You are instructed, gentlemen of the jury, that if
you find from the evidence that the failure of the machine
to perform the use and service intended was due to the
manner and fault of installation by the defendant, his
agent, or servants, or the failure on the part of the de-
fendant to provide necessary speed with which to operate

the machine, then your verdict should be for the plaintiff.''

The error complained of is that the instruction is on the weight of the evidence in that it assumes as a fact that the machinery failed to perform the service for which it was intended. There was no error in this respect. The plaintiff in a letter written to the defendant after the machinery had been in the defendant's possession and tested by him admitted that the machinery would not perform the work it was intended for, but insisted that this was due to the fault of the operator. The plaintiff made two claims in regard to the matter. One was that the defendant did not understand for what use the machinery was intended, and in the second place that the defendant did not run his engine at a sufficiently high rate of speed to properly operate the machinery. Under these circumstances there was no error in giving the instruction under consideration because the assumption caused no prejudice to the rights of the plaintiff.

There being no prejudicial error in the record, the judgment will be affirmed.