## DYKE *v.* MAGDALENA.

### Opinion delivered May 24, 1926.

1. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTION.—Though a writing evidencing the sale of a butcher's refrigerator did not contain an express warranty of its fitness as such, an instruction submitting to the jury the question of an express warranty, if erroneous, was not prejudicial, where there was an implied warranty.

2. SALES—IMPLIED WARRANTY OF MANUFACTURED ARTICLE.—The sale of a butcher's refrigerator to be manufactured for preserving meats carries an implied warranty that it is reasonably fit for that purpose.

3. SALES—BREACH OF WARRANTY—RECOVERY OF PAYMENT.—One who purchased a refrigerator for the purpose of preserving meats is entitled to recover a cash payment on the refrigerator proving worthless, though he had agreed that such payment should be retained for rent and wear and tear in case of default in further payments.

Appeal from Sebastian Circuit Court, Greenwood District; *John E. Tatum,* Judge; affirmed.

*Warner, Hardin & Warner,* for appellant.

*Holland, Holland & Holland,* for appellee.

SMITH, J. Appellants manufactured and sold to appellee a butcher's refrigerator for the contract price of $300, of which $100 was paid in cash and the balance was evidenced by the following written instrument:

"Fort Smith, Ark., Sept. 10, 1924.

"$200.00                          No.........................

                                   Due.......................

"In monthly installments after date, without grace, we, or either of us promise to pay to the order of Dyke Bros.

of Fort Smith, Arkansas, two hundred and no/100 dollars, in installments as follows:

"Twenty and no/100 dollars on the tenth day of each and every month, commencing the 10th day of October, 1924, with interest from date upon the several sums from maturity only, at the rate of ten per cent. per annum, said installments to be applied first upon the interest, and the balance upon the principal.

"This note given for purchase price of the following personal property:

"1 butcher's display refrigerator counter, 4.0 high, 3.0 deep, 10.0 long, style No. 200-A, stained dark oak—glass top and front, center icer.

"The title and ownership of the above described personal property shall remain in the said Dyke Bros. until this note and the interest thereon is paid in full. The makers hereby agree to fully insure said property from loss by fire, said loss, if any, to be payable to Dyke Bros. as their interest may appear. No extension of the time of payment, whether given with or without our knowledge, shall release us or either of us from the obligation of payment. The makers and indorsers of this note hereby waive demand, notice and protest. If this note is not paid in full, all payments made hereon shall be appropriated by the said Dyke Bros. for wear and rent of said property. In the event that the maker of this note shall sell or shall attempt to sell or dispose of said above-described personal property, or any equity he may have therein, or in the event he shall deliver possession of same to any other party, or if said personal property shall be removed from the county of Sebastian, State of Arkansas, or if the maker fails to maintain said insurance, then, at the option of Dyke Bros., this note shall become immediately due and payable, and said Dyke Bros. may, at its election, sue on said note or immediately retake possession of said property. This note is an installment note, and if any of said installments be not paid at maturity, all of said principal and interest shall, at the option of Dyke Bros., become immediately due and pay-

able, and the holder thereof may proceed to sue for and collect the same.

                          (Signed) "L. P. Magdalena."
P. O. Midland, Ark.

"State of Arkansas, County of Sebastian, ss.

"Subscribed and sworn to before me this 11th day of September, 1924. (Signed) Sophie Hennig, Notary Public.

"My commission expires Nov. 16, 1926."

The refrigerator was installed, and was properly iced, but it was found that it would not preserve meats, and notice of that fact was given appellants a few days after the refrigerator was put in use. We so state the fact, because the testimony of appellee was to this effect, and the verdict could not have been returned in his favor unless the jury had found the fact so to be. A mechanic was sent to examine the refrigerator, who did some work on the doors to make them close more tightly. The refrigerator was again iced, and it was again found that it would not preserve meats placed therein, because the temperature could not be sufficiently reduced. Notice was again given of this fact, and a second attempt was made to adjust and repair the defects, but without success. This procedure was repeated at intervals of several days, and at last the mechanic said, "This beats me, I have done all I can do. It is no good." Appellee thereupon abandoned the use of the refrigerator, and declined to make the payment which about that time had fallen due. Thereupon appellant brought suit in replevin to recover possession of the refrigerator and damages in the sum of $100 for the detention thereof. The $100 asked as damages was the amount of the cash payment, and it is appellant's theory of the case that this payment should be credited against the wear and rent of the refrigerator, under the provisions of the contract that, "if this note is not paid in full, all payments made thereon shall be appropriated by the said Dyke Bros. for wear and rent of said property." Appellee, the defendant below, alleged that the refrigerator was bought and sold

with knowledge on the part of both parties that the refrigerator was to be used for a definite purpose, that of keeping meats, and that it was worthless for that purpose. The answer prayed judgment for the return of the $100 paid and for the value of the meat which had spoiled because of the failure of the refrigerator to preserve it. There was a verdict and judgment in appellee's favor for the sum of $127, from which is this appeal.

Appellee alleged in his answer that there was an express warranty of the refrigerator, and offered testimony tending to support that allegation, and that issue was submitted to the jury, over the objection and exception of appellants, who sought to exclude this testimony by requesting an instruction—which the court refused to give—that the jury should not consider any testimony tending to show that there was an express warranty.

It will be observed that the writing evidencing the sale of the refrigerator does not contain an express warranty of the fitness of the refrigerator for use for the purpose for which it was sold, and appellants have cited cases holding that a warranty is so clearly a part of a sale that, where the sale is evidenced by a written instrument, it is incompetent to engraft upon it a warranty proved by parol. *Lower* v. *Hickman,* 80 Ark. 505; *Federal Truck & Motors Co.* v. *Tompkins,* 149 Ark. 664.

Appellee insists that this rule is not applicable here, for the reason that the writing does not set out, and does not purport to set out, the entire contract, as it is shown by the allegations of the complaint and by testimony on behalf of the appellants that a payment of $100 was made, concerning which the contract is silent.

Assuming that it was error to submit the question of an express warranty, for the reason that the writing evidenced the entire contract, we think no prejudicial error was committed in submitting the question of an express warranty, for the reason that there was in fact an implied warranty.

The testimony is that the refrigerator was sold to be used for a known purpose, that of preserving meats. It

was not a known defined article of commerce. It was a manufactured article, sold to be used for a particular purpose, and the vendee had no opportunity to make any inspection which would have determined its usefulness for the intended purpose. The agent of appellants who made the sale, when testifying concerning the thickness of the walls of the refrigerator, the dead-air spaces, and the cork insulation between the walls, admitted that none of these things could be seen or their condition discovered by any ordinary inspection, and that all a person looking over the refrigerator could see would be a nicely finished piece of furniture. Neither the refrigerator bought, nor any other one like it, was in use when the sale was made, and no test of it was made by icing it until the refrigerator had been delivered and placed in position for use. We think there was therefore an implied warranty that the article sold was reasonably adapted to the purpose for which it was intended.

In the case of *Western Cabinet & Fixture Mfg. Co.* v. *Davis,* 121 Ark. 370, a case in which the issues were very similar to those of the instant case, we quoted from the case of *Curtis & Co.* v. *Williams,* 48 Ark. 325, the following statement of the law: "Proof of an express warranty by the defendant of the quality of this machinery was not essential to a recovery. Ordinarily, upon sale of a chattel, the law implies no warranty of quality. But there are exceptions to the rule, as well established as the rule itself. One of these exceptions is where a manufacturer undertakes to supply goods manufactured by himself to be used for a particular purpose, and the vendee has not had the opportunity to inspect the goods. In that case the vendee necessarily trusts to the judgment and skill of the manufacturer, and it is an implied term in the contract that he shall furnish a merchantable article, reasonably fit for the purpose for which it is intended" (Citing other cases).

In the case of *S. F. Bowser & Co.* v. *Kilgore,* 100 Ark. 17, this court quoted with approval from the case of *Kellogg Bridge Co.* v. *Hamilton,* 110 U. S. 108, the

following statement of the law: "When therefore the buyer has no opportunity to inspect the article, or when, from the situation, inspection is impracticable or useless, it is unreasonable to suppose that he bought on his own judgment, or that he did not rely on the judgment of the seller as to latent defects of which the latter, if he used due care, must have been informed during the process of manufacture. If the buyer relied, and under the circumstances had reason to rely, on the judgment of the seller, who was the manufacturer or maker of the article, the law implies a warranty that it is reasonably fit for the use for which it was designed, the seller at the time being informed of the purpose to devote it to that use."

The serviceability and usefulness of the refrigerator was submitted to the jury as a question of fact, and the verdict of the jury is conclusive of the fact that the refrigerator was valueless as such. Indeed, the undisputed testimony appears to establish that fact, and no inspection which appellee could have made at the time of the purchase would have disclosed this fact, so that the principle announced in the cases quoted from is applicable here.

It is earnestly insisted by appellants that the court was in error in rendering judgment for the $100 purchase money which had been paid. But it will be remembered that this suit was based upon a note which reserved the title to the refrigerator in appellants until the purchase money was fully paid, and the suit was not brought to recover the balance of the purchase money but to recover the refrigerator itself under the reservation of title. Nor is the case one where the breach of the implied warranty was waived. Appellants did not give appellee the option of waiving the breach of warranty. On the contrary, there was an election on appellant's part to assert title and to sue for possession. Appellee was not in default in failing to sue for breach of warranty. The testimony shows that the entire time which elapsed between the sale of the refrigerator in Fort Smith, which is appellant's place of business, to the date of the institu-

tion of the suit was only thirty-seven days, and within that time the refrigerator was shipped to Midland, appellee's place of business, the refrigerator was installed, and four attempts, at intervals of several days, were made to remedy the defects which made it useless as a refrigerator.

It could not therefore be said—and certainly not as a matter of law—that appellee had kept the refrigerator for such a length of time that he had waived the right to sue for breach of warranty. Indeed, the testimony on appellee's part was to the effect that he did not accept the refrigerator after testing it. Besides, as we have said, appellants gave him no option so to do, when it brought suit to recover possession of the article sold. *Courtesy Flour Co.* v. *Westbrook,* 146 Ark. 17. If the jury, in making up the amount of the verdict, allowed appellee the $100 paid on the refrigerator, and we must assume that this was done, as the right to recover that sum was submitted to the jury, then the remainder of the verdict, $27, was much less than the loss which appellee's testimony shows was sustained through the spoiling of meat and expenses in attempting to repair and use the refrigerator.

In opposition to appellee's right to recover the $100 paid, appellants cite the case of *B. A. Stevens Co.* v. *Whalen,* 95 Ark. 488. In that case it was held that, where there was a breach of warranty of the soundness or fitness of an article which the vendee had no opportunity to inspect before delivery, he may elect to rescind the contract or affirm by keeping the property, and, when sued for the price, set up the false warranty by way of recoupment, but that he must exercise his right of election within a reasonable time after he discovers the defect, and if he fails so to elect, and thereby waives his right of rescission, he will only be entitled, in a suit for the purchase money, to recoup the cost of correcting the defect, if it could be corrected at a reasonable cost, or the difference between the value of the defective article and one free of such defect.

We think, however, that, if that measure of damages were applied here, appellee would be entitled, under the verdict of the jury, to recover the $100, for the jury has found that there was a breach of the implied warranty and that the refrigerator was not adapted to the use for which it was sold. If the article sold could not be used as a refrigerator, then it was practically without value, as there was no attempt to show that it could be used for any other purpose, and the difference between its purchase price and its actual value was therefore more than $100.

We are of the opinion therefore that no error prejudicial to appellants appears, and the judgment will be affirmed.