## WEED V. DYER.

### Decided April 19, 1890.

1. *Sale—Breach of warranty—Remedies of vendee.*

   Where there is a breach of warranty in the sale of goods, the vendee may rescind the contract, or he may affirm the contract, keep the property and, when sued for the price, set up the false warranty by way of recoupment.

2. *Breach of warranty—Failure to notify vendor—Recoupment.*

   A failure to notify the vendor of a breach of warranty in the sale of goods will not defeat the vendee's right of recoupment.

3. *Manufactured articles—Warranty as to quality.*

   Where a manufacturer contracts to make and sell goods, or a contractor to perform and deliver work, the opportunity of inspection is not afforded the vendee or employer; and the law implies a warranty that the article shall be merchantable and reasonably fit for the purpose for which it was intended.

4. *Account stated.*

   Unless objected to within a reasonable time, an account rendered becomes an account stated and cannot be corrected except for fraud or mistake.

APPEAL from *Yell* Circuit Court, Dardanelle District.
G. S. CUNNINGHAM, Judge.

At the spring term, 1888, of Yell circuit court, Weed, Parsons & Co., publishers at Albany, N. Y., sued Dyer & Hallum on an acceptance for $800, given in part payment for

printing and binding 1000 volumes of a book for Hallum. The written contract stipulated that the pages should contain forty-two lines, and specified that the binding should be "full law sheep." The price of the paper, printing and binding was agreed upon, but certain items were left to be settled for as extra work. Afterwards the size of the page was changed, with Hallum's consent, from forty-two to thirty-nine lines, but Hallum claims that plaintiffs told him that the alteration would not increase the cost. Before delivery of the books, plaintiffs presented a statement of defendant's account, showing the cost of the paper, printing and binding, and of the extra work. Defendant approved the account, but, as he says, "reserving right of correction if wrong." On October 13, 1887, Hallum and Dyer signed the draft sued upon. The books were received in a few days. Defendants did not notify plaintiffs of any defect in the binding or of any mistake in the account as stated. Defendants in their answer alleged that the alteration in the size of the pages entailed an additional cost of $102.77, as shown by plaintiffs' statement; that the books were shipped while "green" and thereby were damaged $1.50 per volume; that plaintiffs had charged $200.00 for extra work that was worth $50.00, and had omitted a credit of $29.82 due defendants. The court refused the following instructions asked by plaintiffs, viz: "(1) If the jury believe Hallum was the real party in interest, and that Dyer was concerned in the matter only for the purpose of securing the price of the books; and if you further believe Hallum was at Albany, N. Y., and examined the proofs, and by his silence, or otherwise, consented to thirty-nine instead of forty-two lines to the page, then he waived that part of the written contract, and is not entitled to recover any damages on account of the books having been published with a less number of lines to the page. (2) If you find there was any defect in the binding of the books, and that the defect was of such a character that ordinary prudence

and examination would have discovered it, and defendants accepted the books and used or sold them, or part of them, without notifying plaintiffs, or offering to return them, so that plaintiffs could comply with the contract, then you will find for plaintiffs in the full sum sued for. (3) If the jury find that, when Hallum was at Albany, N. Y., plaintiffs delivered him a statement of the account, showing an extra charge for printing additional pages and portraits, and made no objection to the claim, he is now estopped to deny the account." The court then gave on its own motion a modified instruction, by striking out all after the word "claim" in the one last above, and substituting the words, "the law presumes that the account was correct, but presumption may be removed by evidence." The court then gave two instructions, at request of defendant, to the effect that if they found the work was not done according to contract, and defendants were damaged by reason of its defective execution, they would credit defendants with the difference of the work as contracted for and as delivered. To the giving of all of which, exceptions were saved. There was verdict and judgment for plaintiffs for $75 and costs.

*Marshall & Coffman* for appellants.

1. The written contract contained no warranty as to binding, except that it was to be in "full law sheep," and none could be imported into it by parol. Benj. on Sales, pp. 570, 609 and cases cited; 38 Ark., 334.

2. The promise of plaintiffs by letter to make good any defects of binding was subsequent, voluntary and not binding. Benj. Sales (Bennett's Ed.), pp. 564, 607, 626.

3. 24 Wis.; 640, stands alone in holding that an implied warranty of merchantability may be proved outside of the written contract, *if the property be capable of inspection.*

4. The court erred in overruling the second instruction asked by plaintiffs. 38 Ark., 334.

5. The last instruction should have been given, there being no claim of fraud or mistake. 41 Ark., 502; 1 S. C. Rep., 178.

6. The first instruction asked by plaintiffs should have been given. 50 Ark., 193; 33 Ark., 465. Written stipulations may be waived by the conduct of parties, and the parties estopped by their acts from claiming what would otherwise have been their rights. *Supra*.

7. It was no excuse for Hallum to say he did not read the account endorsed as correct. 1 So. Rep., 892.

*John Hallum, pro se.*

1. Only a general exception was made to the charge. It did not designate any specific part as objectionable, and must be disregarded. 50 Ark., 348; 44 Ark., 213. There was no exception to the evidence. 44 Ark., 213.

2. The defense was recoupment, which is well settled. 22 Ark., 244.

A failure of consideration, total or partial, or a breach of warranty, fraudulent or otherwise, may be relied on as a defense.

HEMINGWAY, J. The court declined to give two instructions asked on behalf of the appellant, and gave one of its own motion; its action in each particular is relied upon as ground for reversal.

1. It may be that the first of the instructions refused correctly stated the law on a state of case to which it was applicable; but, as the appellee was not seeking to reduce the price to be paid according to the terms of the contract, and only resisted the attempt of appellant to increase such price on account of a change in the contract, it was not a proper instruction to be given in this case. Although Hallum knew and consented to the change, he was informed by appellant, as he says, that it would not increase the cost of the book;

he is therefore not estopped by such knowledge, to decline to pay the increase claimed.

2.   The second of the instructions refused presents a question which has not been expressly adjudicated by this court.

In *Plant v. Condit*, 22 Ark., 454, the court ruled, that for breach of warranty of soundness the vendee may make his election to rescind the contract, or affirm the contract, keep the property, and when sued for the price, set up the false warranty by way of recoupment.   Mr. Benjamin declares it to be the general rule, and it has been for a long time approved by the Supreme Court of the United States. Benjamin on Sales, sec. 894; *Withers v. Greene*, 9 How., 226.   But, as he states the rule, the vendee is required to give notice to the seller only when he rejects the goods and elects to rescind the purchase, and the notice is regarded as the legal equivalent of a return of the goods, and the buyer may insist on his defense without returning or offering to return the goods, and without notice to the seller.   Benj. on Sales, sec. 899.

> 1. Remedies of vendee for breach of warranty.

Acceptance of the goods, when the buyer knows that their quality is inferior to that warranted, implies an agreement to take them notwithstanding the defect, and waives the right to reject them, but does not waive the right to a reduction when sued for the price.   Benj. on Sales, sec. 901.   In the case of *Wheat v. Dotson*, 12 Ark., 699, this court in discussing the right of recoupment in a similar case said, that it did not rest on the ground that the contract had been rescinded, and that a return or an offer to return the property was not a prerequisite to the admission of the defense. It does not refer to the necessity for notice, but, as notice is the equivalent of a return, it must have been in the mind of the court as not a prerequisite to the admission of the defense.   The notice required is a notice of rejection, and in the nature of things would be inapplicable where the goods

> 2. Recoupment for breach of warranty—Failure to notify vendor.

are accepted, and it is only in the latter class of cases that recoupment is sought.

In most cases, the buyer, when he discovers that the quality of the goods is inferior to that warranted, would feel impelled by a sense of right and fair dealing to notify the seller of the fact, (1) that he might satisfy himself of its existence, (2) that he might cure it. But in many cases this course might be found impracticable or even impossible; and, while the failure might be a circumstance for the jury to consider in ascertaining if there was in fact a breach of warranty, it could not defeat the recoupment if the breach was proved. How far such failure should weigh with a jury would vary with the circumstances of each case, and in all cases be a matter for their determination. Benj. on Sales, sec. 900; *Lewis v. Rountree*, 78 N. C., 323; *Brantley v. Thomas*, 22 Tex., 270; *Flint v. Lyon*, 4 Cal., 17.

**3. Warranty as to quality of articles to be manufactured.** It seems to have been conceded in the court below that the contract implied a warranty of the quality of the books; but it is contended here that no such warranty was implied. We think the concession was right, and that the contention can not be sustained. Whether the relation of the parties was that of vendor and vendee or employer and contractor, there is an implied warranty of quality. The rule, *caveat emptor*, had its origin in the fact that the buyer enjoyed the opportunity of inspection, and applies only to sales of specific chattels in existence, for in no other cases is the opportunity afforded. Where a manufacturer contracts to make and sell goods, or a contractor to perform and deliver work, the opportunity of inspection is not afforded the vendee or employer, and the law implies a warranty that the article shall be merchantable and reasonably fit for the purpose for which it was intended. *Curtis & Co. Mfg. Co. v. Williams*, 48 Ark., 325; 2 Suth., Dam., pp. 409-410.

**4. Account stated.** When the appellant delivered to Hallum a statement of his account, he approved it, but he says that he did so with

the understanding that it was subject to his future examination and correction.  It then became his duty to examine the statement and notify errors within a reasonable time, and his failure to do so would be deemed a ratification of his prior approval.  He indicated no errors, but several weeks afterwards the instrument in suit was given and this implied a ratification.  The indorsement of his approval after ratification implies a promise to pay the amount, as upon an account stated, and an account stated can only be corrected for fraud or mistake.  *Lawrence v. Ellsworth*, 41 Ark., 502 ; *Standard Oil Co. v. Van Etten*, 107 U. S., 325.

The instruction given permitted the defendant to contest the validity of the various items of the acccount for any reason that would have been availing if there had been no statement of it, and in this there is prejudicial error.

If there was an account stated without fraud or mistake, the appellant is entitled to the amount thereof, subject to deduction for any damage Hallum may have sustained by breach of contract as to the quality of the books.

Reverse and remand for new trial.