DUTTON & BARNES *v.* McILROY.

Opinion delivered October 25, 1926.

1. CONTRACTS—FAILURE OF CONSIDERATION.—Where a well driller guaranteed lasting water in a well, and it went dry during the dry season, defendant in a suit on a note given for such drilling could plead a failure of consideration.

2. CONTRACTS—FAILURE OF CONSIDERATION—WAIVER.—Where a well driller guaranteed lasting water in a well, and defendant accepted the work and gave his note and used the well until it went dry, he did not waive the defense that the consideration failed, since he could accept the well and rely upon the guaranty.

Appeal from Randolph Circuit Court; *John C. Ashley,* Judge; affirmed.

*R. C. Waldron,* for appellant.

*Pope & Bowers,* for appellee.

McCULLOCH, C. J. Appellants instituted this action to recover the amount of a promissory note executed by appellees McIlroy and his co-appellees, Jackson and Decker, who were sureties on the note, which was executed to appellants for the contract price of drilling a well on McIlroy's land. Appellees defended on the ground of failure of consideration, in that the well did not come up to contract. The case was tried before a jury, and there was a verdict in favor of appellees. The principal contention of appellants is that the evidence is not sufficient to support the verdict.

McIlroy engaged appellants to drill a well on his land, and agreed to pay the price of one dollar and fifty cents per foot. The contention of appellants is that there was no contract to guarantee the quantity of water to be produced in the well, but that they were merely to

ARK.]     DUTTON & BARNES v. MCILROY.     1011

drill, at the price named, to a depth that satisfied McIlroy that "he had plenty of water."

The testimony adduced by appellees was to the effect that appellants were to "guarantee lasting water"—that is to say, a good supply of water during all the seasons of the year. The well was drilled during the latter part of April, 1924, to a depth of about eighty feet, and, according to the testimony, there was a fair supply of water in the well at the time it was finished.

Appellees executed the note in suit on May 3, 1924, due and payable October ........., 1924. The well went dry in July or August, 1924, and McIlroy applied to appellants to drill the well deeper so that an adequate supply of water could be obtained. Appellants employed another driller by the name of Smith to deepen the well, and agreed to pay the cost, twenty-five dollars. McIlroy paid Smith twenty-five dollars for his work, and appellants credited this amount on the note. Smith's effort in drilling the well did not bring any better results, according to the testimony; in fact, Smith did not get the well any deeper. He testified that the hole was crooked and that there were several feet of casing above the surface, and that, in order to go deeper, it was necessary to drill partly through rock and also through mud and a soft, spongy sort of boulders.

The evidence was sufficient to establish the contention of appellees that the well did not furnish "lasting water," or water during all the seasons of the year, but that, on the contrary, the water failed as soon as the dry season came around, and that the effort to drill deeper was unavailing. If this was the true state of affairs, and if appellees are correct in their contention as to the substance of the contract, then the consideration for the note failed, and appellees had a right to plead that failure in defense. *Dutton* v. *Million,* 114 Ark. 330, 165 S. W. 1183. There was a sharp conflict in the testimony on the issue, but the verdict is supported by legally sufficient evidence.

It is earnestly contended by counsel for appellants that McIlroy waived the defect in the well by accepting the work and using the well for a considerable length of time, and that, for that reason, he should not be permitted to assert that the consideration failed. According to the testimony of McIlroy, there was an express warranty as to the capacity and durability of the well; hence the acceptance of the well did not constitute a waiver, for McIlroy had the right to accept the well and rely upon his warranty, and prove either a total or partial failure of consideration in defense against recovery on the note. And, besides that, the testimony disclosed that McIlroy accepted the well and executed the note on assurance from appellants that the flow of water in the well would last. When McIlroy applied to appellants to drill the well deeper, they agreed to do so, and it was not until after the effort to secure more water proved unavailing that McIlroy refused to pay the note. In fact, the note did not become due until it was demonstrated that the well did not afford a lasting supply of water, and then McIlroy refused to pay. Our conclusion is that the evidence supports the verdict, and that the court correctly submitted the issues to the jury.

Judgment affirmed.