IVES *v.* ANDERSON ENGINE & FOUNDRY COMPANY.

Opinion delivered March 14, 1927.

1. APPEAL AND ERROR—PRESUMPTION FROM DIRECTED VERDICT.—On appeal from a directed verdict for plaintiff, the evidence must be given its strongest probative force in favor of the defendants.

2. SALES—WARRANTY—JURY QUESTION.—In an action on notes for the purchase price of an engine, whether plaintiff warranted the engine to be suitable for defendant's purposes and capable of raising a sufficient quantity of water to irrigate defendant's land *held* for the jury.

3. SALES—EXPRESS WARRANTY.—To constitute an express warranty, it is not necessary that the word "warrant" be used, but it may be based on the statements of the seller as to the quantity or condition of the chattel sold, on which the buyer relies and on which the seller intended that he should rely.

4. SALES—EXPRESS WARRANTY.—Statements of the seller's agent that an engine sold had ample strength and power to pull the well successfully, that it was in good condition and would give satisfaction, amounted to an express warranty.

5. SALES—WAIVER OF BREACH.—A breach of warranty in the sale of an oil engine is not waived by an offer of the buyer to pay part of the purchase money, without complaining of the unsatisfactory condition of the engine purchased.

Appeal from Arkansas Circuit Court, Southern District; *George W. Clark,* Judge; reversed.

*John W. Moncrief,* for appellant.

*M. F. Elms,* for appellee.

McHANEY, J. This is an action by appellee to recover upon two promissory notes in the sum of $1,314 each, both dated March 20, 1923, with interest from date at eight per cent. per annum, on the first of which payment was indorsed in the sum of $296.36, $96.36 of which

was for interest and $200 on the principal. One of the notes became due nine months and the other twenty-one months after date. These notes were given for the purchase price of a sixty horse-power Anderson oil engine, title to which was retained in the seller, and were given to the Anderson Foundry & Machine Company, the name of which was thereafter changed to the Anderson Engine & Foundry Company. Appellants defended on the ground that they were induced to purchase the engine on false and fraudulent representations and statements to the appellants that said engine was a good, efficient, sound engine, and was capable of and would operate a certain pump of appellants for watering rice grown by them, and by these representations they were induced to purchase the engine and execute the notes sued on, whereas the engine was not as represented, and would not do the work claimed for it; that appellee knew they were purchasing said engine for the purpose of operating a pump on their rice farm, the well and pump of which were examined by the appellee, and that appellee assured them that the engine was capable of pumping the water to the quantity desired; that these representations were false, and known by the appellee to be false, and that, relying upon said representations, they purchased same; that, if said engine had been as represented, it would have given good service and efficiently operated said pump and well for eight or ten years; that it proved worthless, inefficient, unsound, and that, as a result, they lost their rice crop by failure of the engine to pump water sufficient to irrigate their crops, and that they had been damaged by reason of the loss of crop in excess of the purchase price of the engine; that the vendor warranted said engine to be capable, sound and efficient to operate said pump, which warranty was breached by the failure of the engine to operate efficiently. They made their answer a cross-complaint against appellee, and denied that they were indebted to it in any sum.

Appellee replied to the cross-complaint, in which it denied that it made any false or fraudulent representa-

tions or statements concerning said engine, and denied that it warranted or guaranteed same as alleged, and states that the engine sold was formerly the property of R. L. Ives, and that R. L. Ives sold said engine to the appellants, and that the notes from appellants were taken to appellee for the reason that R. L. Ives was indebted to it in a like sum on the purchase price of said engine.

On the issues thus joined, the parties went to trial. Ralph Wilson testified, for appellants, that he helped appellant, B. B. Ives, in his rice crop in 1923, and that he heard the conversation and trade between appellant, B. B. Ives, and the agent of the appellee when he purchased the engine; that Mr. Ives did not know anything about oil engines, but that he inquired about the efficiency of the engine and what it would do; that Mr. Miller, the pumper, who was familiar with the well and amount of water required, gave them the dimensions of the well and the amount of water it was pumping, and that the agent of appellee stated the engine was capable of pulling the well, and that it had plenty of power, was in first-class condition, and would properly operate the well, and, after that, Mr. Ives bought the engine. In 1923 two capable men, recommended to Ives by the agent of appellee as being capable, operated the engine; that it would not operate very well, but continually got hot; that Mr. Ives knew that the engine had been previously operated up north of Stuttgart, and that the company had remodeled the engine. After Mr. Miller had told him the depth of the well, the capacity of it, how much water it would throw if it had proper power, the agent said the engine would pull it and throw the water with ease. He further testified that they had trouble with the engine in the 1923 season; did not have sufficient power, and sufficient water could not be put through it to keep it cool, and would overheat; that perhaps it would run ten days without giving any trouble, and that, if the engine had been as represented, they would have had no trouble with it; that it was worse in 1924 crop than in 1923; continued to grow worse; two of the engine heads burst in 1924, which

they had welded, and they would crack over again, and they would try to remedy it by new heads. They got the best of oils, which were recommended by appellee, and had experts to look at it, and it was not due to the oil that the engine would get too hot and was overloaded; that they could not finish the pumping season in 1924 with that engine; that, when the engine got hot, the port-holes would close up with carbon and would show red-hot, and they would have to use an excessive amount of oil, and about half the time the engine would not pull itself and they would have to stop and put in oil. The engine caught fire and burned up, and after that they did not use it any more. He was asked this question: "Q. Mr. Wilson, if this engine had done the work that they told you it would do, would it have overloaded? A. No sir." He stated that he had experience in these matters, and that the average life of an oil engine ranges from eight to ten years; that R. L. Ives had used the engine only part of one season before B. B. Ives bought it from the machine company.

On cross-examination he admitted writing, as agent for appellant, B. B. Ives, the following two letters:

"Jan. 8, 1924.

"Anderson Foundry & Machine Co.
"Mr. Winfield T. Durbin.

"Dear sir: We told the banker here to inform you as to our condition, but it seems that he did not do it. We are not in the condition that we would like to be. It is impossible for us to pay the full amount this year, although we can pay the interest and $200 on the note. If this will be satisfactory with you, let us know, and we will make this remittance at once. We did not get to put in the rice we expected to on account of the high water we are bothered with here, and we didn't make a fortune at it. Hoping this will meet with your approval, I remain, Yours truly."

"1/18/24.

"Anderson Foundry & Machine Co.
"Anderson, Indiana.

"Gentlemen: In reply to your letter of the 16th inst., which was in reply to one written by me on the 9th, concerning the payment of a note you hold against me for $1,314, will say that it is out of the question for me to pay or make the payments as you have set out in your letter. The offer I made you, viz., immediate payment of $200 and interest, was made with the ability to make same, this I can do, but to do more it is a question where I can do so. I am a member of the Arkansas Rice Growers' Cooperative Association, and I am bound under the contract with them to ship or deliver my rice to them to mill and sell. I have received an advance payment thereon, the balance will be paid at times as the association accumulates funds to distribute to the members of the association. I am unable to tell when these payments will be made, or how much I will receive when the payments are made, therefore I am at sea as to the possibility of me making a payment greater than I have named. It might be possible that I will be able when I receive the payments on my rice to pay one-half, with interest, but the whole is impossible."

Appellant, B. B. Ives, testified, substantially corroborating Mr. Wilson, and further, that he told appellee that he wanted to water 200 acres or more, and that the agent told him the engine was "of ample strength and power to pull the well successfully, and said it would do it, and he said the engine was in good condition, just as good as new, and would operate that well successfully and give satisfaction." Agent also said he would guarantee it; that he believed what the agent told him, and bought it on his recommendation; that he thought the agent knew what he was talking about; that he had seen the engine up near Stuttgart, but that he had not paid any attention to it, and that he didn't know anything about oil engines at the time, and had had no experience with them. "Q. What finally became of that engine? A. It burned."

He testified that it did not give satisfaction in 1923, and did not in 1924; that he tried to water 190 acres with it in 1924, but that it would not do it; that the agent of the appellee was there after the engine burned, and stated that he did not expect it to burn down, but did not expect it to go through the 1924 crop.

At this point the court took charge of the witness and conducted the examination, and the witness stated that the engine was not satisfactory in 1923, and that they wrote the appellee about the trouble with the engine, its getting hot, and they sent a blue-print for them to use in repairing the engine, but that they couldn't do it as they wanted it done. He thought they wanted them to use the water over again through the engine, and they dug a pool, filled it up with water, and then ran the water through the engine and back into the pool again; that he directed his son-in-law, Mr. Wilson, to write the letters and offer to make a payment of $200 on the notes, and that, prior to the installation of the oil engine, they had a sixty-horse power steam boiler and a forty-horse power engine which would throw 1,200 gallons.

The court then stated that the letters of January, 1924, constituted a complete ratification of the contract made in March, 1923, and that these letters precluded the raising of any objection to any defects that they knew existed at that time, and he thereupon directed the jury to return a verdict for the appellee on the two notes sued on. Thereupon counsel for appellants asked permission of the court to introduce further evidence, and stated that they offered to prove by the witnesses, B. B. Ives and Wilson, that the appellee advised appellants, in the fall of 1923, that, by running more water through the engine, the trouble would not occur, but would be eliminated; and that defendants relied and depended on that, and were expecting to follow those instructions in the spring of 1924 when the season opened, which ordinarily would be in May or June, and that they would follow these instructions, use the quantity of water suggested and indicated by appellee, which did not eliminate

or reduce the trouble at all, but grew worse and increased until the engine finally burned. Also, that appellants had tendered the return of the engine to plaintiff. The court refused the proffered testimony, and the jury, as directed, returned a verdict for appellee for the amount of the notes sued on, with interest, from which comes this appeal.

We think the court erred both in directing a verdict for the appellee and in refusing to permit counsel to proceed with his case as suggested. Giving the evidence, as set out above, its strongest probative force in favor of appellants, as we are bound to do under numerous decisions of this court, we think it was a question for the jury to determine whether the appellee guaranteed or warranted the engine to be suitable for appellant's purposes, and that it would perform the work of pumping the well with a sufficient quantity of water to water the land appellant B. B. Ives told him he wanted to water.

To constitute an express warranty it is not necessary that the word "warrant" be used, but may be based on the statements of the seller as to the quality or condition of the chattel he is selling. As stated by this court in the case of *Warren* v. *Granger,* 151 Ark. 457, 236 S. W. 608: "It is true Granger did not testify that Warren had used the term 'warrant' in stating the quality of the ice-box, but it was not essential that he should have done so to establish a warranty, because such was the purport and necessary effect of what he did say."

The court then quoted with approval from 24 R. C. L. (Sales) § 437, as follows: "To constitute an express warranty the term 'warrant' need not be used; no technical set of words are required, and it may be inferred from the affirmation of a fact which induces the purchase and on which the buyer relies and on which the seller intended that he should do so, but it has been said that the words used must be tantamount to a warranty, and not dubious or equivocal."

Appellant, Ives, testified that the agent of appellee said that the engine had "ample strength and power to

pull the well successfully, and said it would do it, and he said that the engine was in good condition, just as good as new, and would operate that well successfully and give satisfaction." Again he testified that the agent said he would guarantee it to operate it. "Q. He guaranteed it would do these things? A. Yes sir." Admitting this testimony to be true, which we must do for the purpose of this decision, this amounted to an express warranty by the seller of the engine to do the work the witness testified that he said it would do.

But it is contended by appellee that, since the appellant, B. B. Ives, had used the engine for the 1923 crop and found it unsatisfactory, and that, in January, 1924, he wrote the two letters above set out, and later, in February, made a payment of $200 and interest thereon without making any complaint in these letters about the unsatisfactory condition of the engine, this amounted to a ratification of the purchase and a waiver of any right to insist on a breach of warranty thereafter. But this is not correct. The most that can be said of this is that it is a reaffirmance of the sale after the breach of the warranty, which does not constitute a waiver of the breach. In *Parrett Tractor Co.* v. *Brownfiel,* 149 Ark. 569, 233 S. W. 707, this court said: "The substance of the declaration contained in this instruction is that an unconditional promise to pay the balance of the purchase price, with the knowledge of the breach of the warranty, constitutes a waiver of the breach. This is but another way of saying that a reaffirmance of the sale after the breach of the warranty constitutes a waiver. Such is not the law. This court held in the case of *Plant* v. *Condit,* 22 Ark. 454, that, where there is a breach of an express warranty, the vendee may rescind the contract, or he may affirm the contract, keep the property, and, when sued for the price, set up the false warranty by way of recoupment." *Weed* v. *Dyer,* 53 Ark. 155, 13 S. W. 592.

In the case of *Courtesy Flour Company* v. *Westbrook,* 146 Ark. 17, 225 S. W. 3, we said: "The law on the subject is that, where chattels are purchased under

express warranty as to quality, the purchaser may rescind on discovering the inferior quality of the article sold, but is not bound to do so, and, on the contrary, may retain the article purchased and sue on the warranty, or recoup the damages when sued for the price.''

Furthermore, appellants' counsel offered to prove that, in the fall of 1923, the appellee advised appellants that, by doing certain things, the trouble with the engine would be eliminated, and appellants relied and depended on that, and were expecting to follow those instructions in the spring of 1924, when the season opened.

We are therefore of the opinion that the case, as far as appellants were permitted by the court to make it out, was one for the jury, and that appellants should have been permitted to develop their case. For the error in directing a verdict for the appellee the judgment will be reversed, and the cause remanded for a new trial.