NICHOLS *v.* LEA.

4-9033                    225 S. W. 2d 684

Opinion delivered January 9, 1950.

*Bob Bailey, Jr.* and *Bob Bailey,* for appellants.

*J. H. Brock* and *George F. Hartje,* for appellees.

HOLT, J.   In December, 1947, appellants, J. R. and H. A. Nichols, brothers, and residents of Texas, sold and delivered (from their trailer truck), to appellees, Lea and Hogan, partners operating a gasoline station in Conway, Arkansas, $975 worth of anti-freeze in sealed one-gallon containers.   The evidence shows that at the time of the sale, appellants represented to appellees that the anti-freeze was as good as Prestone, a well-known, standard anti-freeze, that it had the same base (Ethylene Glycol) as Prestone, would mix with other anti-freeze then on the market, and was suitable and fit for the use intended.

Relying on these representations, appellees - purchased the anti-freeze and shortly thereafter, and before any sale had been made by appellees, they became suspicious of the quality and fitness of the anti-freeze and of appellant's representations, and took one of the sealed gallon containers to the Laboratory of the Arkansas State Teachers College, where a chemical analysis was made which showed, in effect, that the product was not of a Prestone base, but contained five pounds of calcium chloride per gallon, which when coming in contact with iron and other metals caused them to disintegrate, corrode and slough off, and was unsuited for use in automobiles, the intended use.

Following this information, appellees filed suit to recover from appellants the purchase price, $975, alleging that the warranties above noted were made by appellants, that they were false, that the anti-freeze was unfit and unsuitable for use in automobiles, was not as good as Prestone, did not possess the same base and would not mix with other anti-freeze, that it was totally worthless for any use, and after filing bond, caused appellants' truck to be attached.

Appellants later filed a forthcoming bond, retained possession of the truck, and removed it to Texas.

Appellees, B. H. and L. F. Ray, also in December, 1947, filed a separate suit against appellants, containing similar allegations, to recover $320 for anti-freeze which they had purchased from appellants. They also caused an attachment to be issued against appellants' trailer truck. Appellants also filed a forthcoming bond in this suit.

The facts in each case were practically identical and they were consolidated for trial, the only factual difference being that in the Ray case, appellants had made an additional representation that the anti-freeze in appellants' delivery truck at the time of the sale to the Rays was the same as that in the gallon containers and gave them a sample thereof from their truck. A chemical analysis of this sample was made which showed that it was of good quality but that it was not the same as the

anti-freeze contained in the gallon containers sold to appellees, which was analyzed and shown to have a base twenty-eight to thirty per cent calcium chloride.

Appellants' answers were a general denial and in cross-complaints sought judgments for damages. The causes were submitted to the jury under proper instructions, verdicts were returned in favor of appellees for the full amounts claimed, and from these judgments is this appeal.

(1)

Appellants first question the sufficiency of the evidence.

The evidence appears to be in the sharpest conflict. However, when viewed in the light most favorable to appellees, as we must, we cannot say that there was no substantial evidence to warrant findings by the jury that appellants, in inducing the sales, had made false statements amounting to warranties as to the quality and fitness of the anti-freeze for the purpose and use intended, and that appellees should recover.

"To constitute an express warranty it is not necessary that the word 'warrant' be used, but may be based on the statements of the seller as to the quality or condition of the chattel he is selling. . . . The court then quoted with approval from 24 R. C. L. (Sales) § 437, as follows: 'To constitute an express warranty the term "warrant" need not be used; no technical set of words are required, and it may be inferred from the affirmation of a fact which induces the purchase and on which the buyer relies and on which the seller intended that he should do so, but it has been said that the words used must be tantamount to a warranty, and not dubious or equivocal.' " *Ives* v. *Anderson Engine & Foundry Company,* 173 Ark. 112, 292 S. W. 111. See, also, *Harris* v. *Hunt, ante,* p. 300, 225 S. W. 2d 15.

(2)

Appellants next contend that the court lacked jurisdiction.

It appears that appellants in a number of pleadings, in each case, asserted that they were appearing for the sole purpose of challenging the validity of attachments of their truck, the services of summons on them, and the jurisdiction of the court as to their persons and property.

We think it unnecessary to determine the validity of the attachment proceedings, or the services of summons on appellees, for the reason that appellants entered their appearance in each case for all purposes by filing, along with their answers, cross-complaints in which they sought to recover judgments for damages from appellees. By filing these cross-complaints and seeking affirmative relief, they entered their appearance for all purposes and waived any defect in the service of summons or the attachment proceedings and subjected themselves to the court's jurisdiction.

In these circumstances, the general rule is stated in 3 Am. Jur., under the topic "Appearances," § 18, page 792, in this language: "The filing of a set-off, a counterclaim, a demand in recoupment, or a cross petition, is such an assumption of the role of actor in a suit as will constitute a general appearance, even though the defendant asserts therewith an objection to the jurisdiction of the court, and submits the person of the defendant to the jurisdiction of the court to all intents and purposes as fully and completely, and with the same force and effect, as if the summons had been duly and personally served on him within the jurisdiction of the court," and in *Linton* v. *Heye,* 69 Neb. 450, 95 N. W. 1040, 111 Am. St. Rep. 556, in an opinion by the Supreme Court of Nebraska, cited in support of the above text, it was held: (Headnote) "Jurisdiction—appearance.—If lack of jurisdiction does not appear on the face of the record, the defendant may plead to the jurisdiction or unite a plea to the jurisdiction with his other defense to the action, without waiving his right to insist on the lack of jurisdiction of the court, but this rule is limited to cases where the plea goes to defeat a recovery by the plaintiff, and does not extend to cases where the plea is

joined with a cross-complaint or counterclaim, necessitating a trial on the merits of the issues tendered by the pleadings.''

In our own case of *Federal Land Bank of St. Louis* v. *Gladish,* 176 Ark. 267, 2 S. W. 2d 696, we quoted with approval the following from 2 R. C. L., p. 340. ''There are numerous cases in which the defendant has been held to waive any question of jurisdiction over his person by taking some step to contest the cause upon the merits after his motion on special appearance has been overruled. One seeking to take advantage of want of jurisdiction in every such case must, according to these decisions, object on that ground alone. He must keep out of court for every other purpose. If he goes in for any purpose incompatible with the supposition that the court has no power or jurisdiction on account of defective service of process upon him, he goes in and submits for all the purposes of personal jurisdiction with respect to himself, and cannot afterwards be heard to make objection. . . .

'' 'A defendant appearing specially to object to the jurisdiction of the court must, as a general rule, keep out of court for all other purposes. In other words, he must limit his appearance to that particular question or he will be held to have appeared generally and to have waived his objection. If he takes any step consistent with the hypothesis that the court has jurisdiction of the cause and the person, such special appearance is converted into a general one, whether it is limited in its terms to a special purpose or not.' 4 C. J. 1319. . . .

''The appellant in this case, by filing a counterclaim and asking for affirmative relief, asking the court to give it judgment, thereby enters its appearance and waives any defect there might be in the service, or any failure to get proper service, if there was such failure. In other words, the defendant, by filing a counterclaim and asking affirmative relief in the court, thereby subjected itself to the jurisdiction of the court, whether it had been served at all or not.''

Finding no error, the judgments are affirmed.