EARP *v.* HUNT.

5-3411

386 S. W. 2d 492

Opinion delivered January 18, 1965.

[Rehearing denied March 1, 1965.]

*Williams & Gardner,* for appellant.

*White & Young,* for appellee.

SAM ROBINSON, Associate Justice. In November, 1961, appellee, Earl H. Hunt, Jr., purchased from A. B. Earp, doing business as Earp Equipment Sales Company, four coin operated dry cleaning machines for the purchase price of $13,500.00. Hunt lives at Clarksville where he opened a dry cleaning business. Earp's place of business is at West Memphis.

In March, 1963, Hunt filed suit in the Pope Circuit Court against Earp alleging breach of contract. It was alleged that Earp had warranted the machines to last 10 years without major repairs; that in the operation of the machines in the ordinary manner they had deteriorated due to corrosion to the point that they were worthless. The case was tried on the issue of whether Earp had breached the contract, and if so, the amount of damages, if any, suffered by Hunt as a result of the breach. There was a jury verdict and judgment for Hunt in the sum of $6,403.75. Earp has appealed.

First, it was shown by substantial evidence that working parts of the machines had become so corroded

as to render the machines worthless for the intended use. Several parts of the machines were introduced in evidence. It is clearly obvious that the parts had been ruined by corrosion. The corrosion is caused by a cleaning material known as perchlorethylene forming an acid. This was the cleaning material recommended by the manufacturer of the machines. Appellant claims that the cleaning material broke down into acid because of excessive heat. Appellee denies that the machines got too hot. He testified that he had thermometers installed to enable him to know at all times the amount of heat that was being generated; that he did not allow the heat to become greater than that recommended by the manufacturer of the machines. Of course this was simply a jury question.

Appellant also contends that the ruined parts could be replaced for about $340.00. The jury could have found that it would do no good to replace parts which had been ruined in a very short time by ordinary use of the machines; that if replaced, they would again deteriorate in the same manner. It was shown that some parts had been replaced and the new parts were soon ruined by the acid. In fact, the jury could have arrived at a verdict of something over $6,000.00 by taking into consideration the number of new parts and the cost thereof that would be required to enable Hunt to operate the machines for the period of the warranty.

Now we come to the proposition of whether there is any substantial evidence that appellant warranted the machines to last 10 years without major repairs, and if so, is there substantial evidence of a breach of the warranty. It appears that after appellee decided to go into the dry cleaning business with coin operated machines, he made a deal to purchase machines from an Oklahoma concern and paid $200.00 down on the purchase price. Appellant, who sold, among other things, coin operated dry cleaning machines, heard about appellee going into this kind of business and got in touch with him and prevailed upon him to break his contract with the Oklahoma concern and buy the machines sold

by appellant. Appellee got out of the Oklahoma contract by forfeiting the $200.00 he had paid on the purchase price of the Oklahoma machines.

Appellee testified positively that appellant warranted the Hammond machines sold by him to last at least 10 years without a major breakdown. Appellee is corroborated by the testimony of John T. Laneer. Ark. Stat. Ann. § 85-2-313 (a).

The evidence is convincing that Earp's affirmation of fact that the machines would last 10 years without a major breakdown had a natural tendency to influence Hunt to break his contract with the Oklahoma people and buy the Hammond machines sold by Earp. In *Harris v. Hunt,* 216 Ark. 300, 225 S. W. 2d 15, the court quoted from *Ives* v. *Anderson Engine & Foundry Co.,* 173 Ark. 112, 292 S. W. 111, as follows: " 'To constitute an express warranty it is not necessary that the word 'warrant' be used, but may be based on the statements of the seller as to the quality or condition of the chattel he is selling. . . .' " To the same effect is § 85-2-313 (2).

Appellant also contends that the contract was reduced to writing; that it does not contain a warranty, and that evidence was not admissible to vary its terms. The instruments appellant claims to constitute a contract are the order prepared by appellant and signed only by appellee, and the bill of sale. The order does not purport to be a contract at all, it is simply an order given by appellee for the machines; it creates no obligation whatever on the part of the seller. Neither is the bill of sale a contract; it is evidence of title and was delivered by the seller to the Peoples Exchange Bank of Russellville after the machines had been shipped so that the bank would loan Hunt a substantial portion of the purchase money. The bill of sale did state that the Earp Equipment Company would warrant the title to the machines. The bill of sale does not purport to be a sales contract; it is signed only by the seller and creates no obligation on the part of the purchaser.

There was no attempt to vary the terms of the purchase order or the bill of sale. In fact, it is shown that as a part of the purchase contract Hunt gave Earp his promissory note in the sum of $2,625.00. Nothing is said in the aforesaid instruments about the note, yet, no doubt it was an important part of the purchase contract. Of course evidence is not admissible to vary the terms of a written contract; here, however, it cannot be said that there was a *written* contract of purchase.

Appellant makes the further argument that the record does not show appellee relied on the alleged warranty made by Earp. The warranty was very material. The purchaser could not hope to make any profit out of coin operated machines costing $13,500.00 unless the machines would last a long time. It has been held that when a misrepresentation is material in a contract it is presumed that the party to whom the misrepresentation was made relied on it. *Manhattan Credit Co.* v. *Burns,* 230 Ark. 418, 323 S. W. 2d 206. We think the same rule should prevail here. Furthermore, we believe that the evidence establishes a reasonable inference that the purchaser relied on the warranty.

Appellant also argues that the court erred in giving appellee's instruction defining a warranty and in failing to give appellant's instruction 2-A defining the measure of damages. We have examined all the instructions given and refused and find that the instructions given properly submitted the issues to the jury.

Affirmed.