Hayden CARTER *v.* Lee QUICK et ux

77-186                                    563 S.W. 2d 461

Opinion delivered April 3, 1978
(Division II)

*Rhine, Rhine & Young,* by: *Robert E. Young,* for appellant.

*Mooney & Boone,* by: *Joe C. Boone,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant Hayden Carter contracted to build a dwelling house for appellees Lee and Irline Quick on property they owned about one mile west of Paragould. The oral contract was entered into sometime in October, 1973. Plans and specifications were furnished by the Quicks. The agreed price was $25,000. The Quicks moved into the house in December, 1973, and were occupying it when this suit was filed. They commenced this action for breach of contract, alleging that Carter had represented and warranted that the residence would be constructed in a good workmanlike manner and that the quality of construction would be equal to, or better than that of Carter's own residence. The Quicks also alleged negligence in the performance of the contract. Carter denied all material allegations of appellees' complaint.[1] The case was tried by the court, without a jury, and judgment for $4,060 for damages was granted the Quicks, but Carter was allowed $205 on his cross-complaint, which was not abstracted. Carter alleges several grounds for reversal and we find merit in one of them and reverse the judgment on that account.

Carter moved for a "directed verdict" on the ground, among others, that the Quicks failed to show a breach of the contract because no evidence was presented as to the quality of workmanship of his own residence. The Quicks had complained more about the workmanship in the brick veneer on their house than anything else, but they also complained of the fireplace, allegedly out-of-plumb doors and windows, the use of ungalvanized nails in walls, the location of a switch and

---

[1]Carter also alleged that the contract was not with him but was with Carter Construction Company, Inc. This defense seems to have been waived. At any rate, no point is made of it.

fuse box and floors they said were not level. There was substantial evidence that the workmanship in laying the brick was defective and the circuit court gave judgment on this item for the lowest estimate of the cost of replacement, $4,000. He also allowed $20 for reframing the garage door, $20 for moving either a fuse box or a water heater and $20 to repaint the garage to cover rust on ungalvanized nails. There was substantial evidence to support the awards of all except the last item. On that item, it seems clear that appellees prevented the repainting that Carter offered to do.

The terms of the contract were shown by the testimony of Lee Quick and Carter. Lee Quick said that Carter declined to enter into a written contract but promised that "he would build the house the same quality and be as good as his own," with certain exceptions not material here. Prior to this agreement, the Quicks had viewed Carter's residence. Carter testified that he told the Quicks, "If you want to look at my house, look it over. I'll build you one just like it with the same material and workmanship as my house." He said that he used ungalvanized nails in his own house and that they are visible. He also testified that the brickwork on his own house was comparable to that on the Carter house and that the Quick house was "as good and workmanlike as the house I was living in at the time." The abstract of the evidence does not reflect any evidence that Carter agreed, as the Quicks alleged, that the house "would be constructed in a good and workmanlike manner with proper construction."[2] Carter's testimony was the only evidence pertaining to the quality of the workmanship on his own house.

We are not presently concerned with the question whether there was an implied warranty of the quality of the materials and workmanship used on the construction of the Quick home. For the purposes of this opinion, we assume that there was. But, according to the testimony in this case, there was an express warranty. Although we have no cases involving the effect of an express warranty upon an implied

[2]Appellees say in their brief here that Carter admitted in a deposition that he expressly agreed that the house would be completed and finished in a good, workmanlike manner. There is no indication that this deposition, which was not abstracted because appellant treated it as irrelevant on appeal, was ever introduced or offered in evidence.

warranty in building contracts, we conclude that implied warranties are not applicable when there is an express warranty, by analogy to pre-Commercial Code sales contract cases, the reasoning in such cases being appropriate to a contract such as this. The oral contract here was based upon an express warranty of quality in unequivocal language even though the words "warrant" and "warranty" were never used. *Harris v. Hunt*, 216 Ark. 300, 225 S.W. 2d 15; *Nichols v. Lea*, 216 Ark. 388, 225 S.W. 2d 684; *Ives v. Anderson Engine & Foundry Co.*, 173 Ark. 112, 292 S.W. 111; *Warren v. Granger*, 151 Ark. 453, 236 S.W. 607. Where a contract contains an express warranty on the subject of an asserted implied warranty, the former is exclusive and there is no implied warranty on that subject. *C. B. Ensign & Co. v. Coffelt*, 119 Ark. 1, 177 S.W. 735; *Elder Grocery Co. v. Applegate*, 151 Ark. 565, 237 S.W. 92; *Earle v. Boyer*, 172 Ark. 534, 289 S.W. 490; *Reed v. Rea-Patterson Milling Co.*, 186 Ark. 595, 54 S.W. 2d 695. In *C. B. Ensign & Co. v. Coffelt*, supra, it was argued that there was an implied warranty of the suitability of a carbide gas lighting plant, but we held that there was no such warranty when the contract included an express provision that the plant would diffuse light equal to a sample exhibited. It would be difficult to find a more analogous situation. The evidence was not sufficient to show a breach of warranty. Appellant's motion should have been granted.

Appellant also questions the measure of damages applied by the trial judge, i.e., the cost of replacing the allegedly defective brickwork. It is highly likely that this question will arise on retrial. Appellant contends that the proper measure of damages is the difference between the value of the building erected and the value of the building if it had been built according to the contract. In making this argument, appellant relies on Restatement of the Law, Contracts § 346 (1) (a) (ii) and language in our opinion in *J. E. Hollingsworth & Co. v. Leachville Special School District*, 157 Ark. 430, 249 S.W. 24. The Restatement rule is stated as follows:

> The difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if con-

struction and completion in accordance with the contract would involve unreasonable economic waste.

See also, 5 Corbin on Contracts 485, 491, § 1089.

In *Hollingsworth,* we approved the following declaration of law.

> A substantial compliance by the contractor is all that is required under the law, he being charged (where there is a substantial compliance) with the difference in value between the work as done and as contracted to be done, or the replacement of defective work where this can be done without great expense or material injury to the structure as a whole.

We also approved an award by the chancellor of the cost of tearing down and removing defective work and rebuilding a school building according to the original plans. The chancellor had stated the question to be decided thus:

> Could the defective masonry have been replaced with reasonable expense without tearing down the whole structure? If it could, then the district is entitled to charge only what such cost would have been, together with difference in value of brick, steel, lugs, caps, bases, etc., furnished and those contracted for. On the other hand, if the inferior masonry was all over the building so that the structure was unsafe (and the maximum of safety is required for school buildings where hundreds of little children are housed), and it was necessary to rebuild in order to be certain of durability, then the district was justified in dismantling the house as a whole and in the rebuilding to use materials conforming strictly to the contract.

That case was a suit by the contractor for breach of contract after his work had been stopped by the owner before the building was complete. The owner (school district) cross-complained. The damages awarded were the costs of the completed building, including the cost of tearing down and removing defective parts of the work done by the contractor.

It seems, however, that the principles stated in the above quotations should apply in a case like this one where construction was completed and the contractor paid.

The underlying purpose in awarding damages for breach of contract is to place the injured party in as good position as he would have been had the contract been performed. *Rebsamen Companies, Inc. v. Arkansas State Hospital Employees Federal Credit Union,* 258 Ark. 160, 522 S.W. 2d 845; 11 Williston on Contracts, (3rd Ed.) 345, § 1363; 5 Corbin on Contracts 5, § 992. It has generally been considered that financial loss is the measure, as was said in the cited case. Yet, the difference in value of a building as erected and its value if it had been constructed according to the contract is not always appropriate where the contractor's performance is defective. See Annot. 76 ALR 2d 805 (1961). It has always been recognized that in an action by a contractor to recover the contract price, where there has been substantial performance or the work has been accepted by the owner notwithstanding defects therein, the contractor is only entitled to recover the contract price, less the cost of correcting such defects. *Mitchell & Pumphrey v. Caplinger,* 97 Ark. 278, 133 S.W. 1032. The applicable rule was stated in *Roseburr v. McDaniel,* 147 Ark. 203, 227 S.W. 297, thus:

> The rule established by decisions of this court is that, where a building contract is substantially performed, even though there are omissions and deviations therefrom, if such defects do not impair the structure as a whole and are remedial "without doing material damage to other parts of the building in tearing down and reconstructing, and may without injustice be compensated by deductions from the contract price," there may be a recovery for the amount found due after making such deductions. ***

See also, *Harris v. Holder,* 217 Ark. 434, 230 S.W. 2d 645. This particular approach does not seem to have been utilized in Arkansas in cases such as this, where the contractor has been fully paid and the owner sues for damages for breach of contract. But the cost of remedying such defects has been considered in other jurisdictions as a measure of damages for the builder's breach of contract, in an action such as this, as in-

dicated by the Restatement Rule. See Annot., 78 ALR 805, 810, 815, Footnote 14; 11 Williston on Contracts (3rd Ed.) 344 § 1363. Sometimes, however, "difference in value" is considered as a limitation on the owner's recovery for cost of correction. See *Ward* v. *Qualls,* 229 Ky. 662, 17 S.W. 2d 739 (1929); *State Prop. & Buildings Com'n.* v. *H. W. Miller Construction Co.,* 385 S.W. 2d 211 (Ky., 1964). On the other hand, it has been held that the difference in value rule in case of defective performance applies only when it would be unfair to apply the cost of construction rule. *Bellizzi* v. *Huntley Estates, Inc.,* 164 NYS 2d 395, 3 NY 2d 112, 143 NE 2d 802 (1957).

It has been said that as a general rule the cost of correcting defects, rather than the difference in value, is the proper measure of damages where the correction would not involve unreasonable destruction of the work and the cost would not be grossly disproportionate to the results to be obtained. 13 Am. Jur. 2d 79, Building & Construction Contracts, § 79. See also, 5 Corbin 491, § 1089, where the author says that the cost of curing defects should be the measure whether the breach of the contract is large or small and that it should be applied in every case, except where the actual curing of the defects would cause unreasonable economic waste. This view is consistent with the result in *Hollingsworth,* where the contention was that the owner had not properly proved its damages.

It has been held in other jurisdictions that the cost of correction, even though substantial, if not grossly and unfairly disproportionate to the good to be attained, rather than the "difference in value" is particularly appropriate where the building is a dwelling house. *Ritchey* v. *Sato,* 39 Hawaii 500 (1952); *Fox* v. *Webb,* 268 Ala. 111, 105 So. 2d 75, 67 ALR 2d 1077 (1958). See also, *Baldwin* v. *Alberti,* 58 Wash. 2d 243, 362 P. 2d 258 (1961). This is because the interest of the owner is in having defective construction corrected so that he and his family may enjoy a properly constructed dwelling and he is not concerned with offsetting any loss on a possible resale of the property. In such a case, aesthetic values are properly involved. This is a reasonable and proper approach to the matter, and we think it peculiarly applicable in this case, where the house was built on the owner's property for oc-

cupancy by him and his family, and all parties agree that the present market value exceeds the contract price. The owner, however, is not to be deprived of the benefit of his bargain, if the contract price was less than the value of the building. See *Ward* v. *Qualis,* supra.

We note also that the "cost rule" of damages has been applied in many cases where the defects were in floors, walls and roofs. See *Southern Surety Co.* v. *Sealy Independent School Dist.,* 10 S.W. 2d 786 (Tex. Civ. App., 1928); *Blecick* v. *School District No. 18 of Cochise County,* 2 Ariz. App. 115, 406 P. 2d 750 (1965) and cases cited therein.

Appellant contends that the cost of replacement of the brickwork was so excessive that, as a matter of law, the cost of replacement measure of damages is inapplicable, and since the value of the house as constructed exceeds the contract price, appellee was not entitled to recover. The burden of proving affirmatively and conclusively that the cost was unreasonable, or an economic waste, was on appellant. *County of Maricopa* v. *Walsh & Oberg, Architects,* 16 Ariz. App. 439, 494 P. 2d 44 (1972); *Blecick* v. *School District No. 18 of Cochise County,* supra; 5 Corbin on Contracts 488, 492, § 1089. It cannot be seriously contended that replacement would result in material injury to the structure. The mere fact that replacement would cost $4,000 or more and the contract price was only $25,000 does not mean that the appellant had met his burden to the extent that the court should say, as a matter of law, that there was an unreasonable economic waste or that the expense is too great to resort to this measure of damages. In *Southern Surety Co.* v. *Sealy Independent School Dist.,* supra, the Texas Court of Civil Appeals held that the cost of correction amounting to $17,100 was the proper measure of the owner's damage when the contract price was $41,245.81. In *Ritchey* v. *Sato,* supra, the cost of correction allowed was $2,000 and the contract price for the dwelling was $7,600. On the evidence presented the question was one of fact. This is consistent with the statements in *Hollingsworth* that the contentions of the contractor were substantially questions of fact. The defects in that case were in the brick walls of the building. The question of damages, both as to measure and amount, seems to have been treated as a question of fact.

Appellant also contends that he was entitled to a directed verdict because appellees were constantly at the construction site and the defects of which they complain were readily apparent and because they accepted the residence as constructed. We consider the evidence on this question to be somewhat less than conclusive. There is some dispute about the frequency of Mrs. Quick's visits to the job site and of her complaints or instructions about the work. We feel, however, that even if it be taken as established that all the defects were obvious and not latent, there was a question of fact as to waiver. There was evidence that Carter asked that a loan being made to the Quicks on the completed house be closed by December 15, 1973, when the lending agency closed its fiscal year and that the Quicks did so, and paid Carter, relying upon Carter's promise that he would return and finish any work that was incomplete and remedy any defects. There was also testimony that Lee Quick was in ths hospital at the time and that his wife moved into the house while he was in this hospital. There was also testimony that Carter had made some effort to correct some of the defects. It is also signficiant that this house was built on property owned by the appellees.

If appellant had not been fully paid and had sued for a balance due him, there would be little room for doubt about the inapplicability of waiver in this case. It is well established by our decisions that a contractor suing for the contract price, on the balance due him, after acceptance of the work by the owner, may only recover the contract price less the costs of correcting defects. *Fitzgerald* v. *LaPorte,* 64 Ark. 34, 40 S.W. 261.; *Harris* v. *Holder,* 217 Ark. 434, 230 S.W. 2d 645.

Waiver of defects is a question of fact to be determined from the circumstances of the case. *Mitchell* v. *Carlson,* 132 Mont. 1, 313 P. 2d 717 (1957). See also, *Vernali* v. *Centrella,* 218 Conn. Sup. 476, 266 A. 2d 200 (1970). The taking of possession and use by an owner of a building constructed on land owned by him, unaccompanied by other indications of acceptance of the work, can seldom be construed to be a waiver of either known or unknown defects in the construction of the building, because his use and possession are consistent with his ownership and he has no real alternative. Annot. 20 LRA (n.s.) 872 (1909).

When all the circumstances here are considered collectively, we cannot say that there was a waiver as a matter of law. Acceptance upon assurances that defects would be corrected is not alone sufficient to constitute waiver. *Dutton & Barnes* v. *McIlroy*, 171 Ark. 1010, 287 S.W. 370. Acceptance and occupancy by the owner of the land upon such a promise do not constitute waiver. *Kendrick* v. *White*, 75 Ga. App. 307, 43 S.E. 2d 285 (1947). Neither payment of the contract price by the owner nor occupancy by him even with knowledge of defects, standing alone, constitutes a waiver of defective performance. *Sparling* v. *Housman*, 96 C.A. 2d 159, 214 P. 2d 837 (1950). *Aubrey* v. *Helton*, 276 Ala. 134, 159 So. 2d 837 (1964); *Barton* v. *Morin*, 281 Mass. 98, 183 N.E. 170 (1932); *Garbis* v. *Apatoff*, 192 Md. 12, 63 A. 2d 307 (1949). Mere acceptance and occupation by the owner do not constitute a waiver of defective performance, unless the use of the structure is accompanied by conduct clearly indicating an acceptance of the work. *Aubrey* v. *Helton*, supra; *Kendrick* v. *White*, supra. See also, *Vernali* v. *Centrella*, supra. Payment and occupancy together without more, is not a waiver as a matter of law. *Mitchell* v. *Carlson*, supra.

It has been held that an owner who was convalescing from an illness when a house being built for him was completed, so that he was unable to inspect it, but who, upon insistence of the builder, went to a bank to borrow the last payment due on the contract and paid the contractor, with the definite understanding that the contractor would make any adjustments with the owner that proved to be proper, did not waive his right to assert defective performance. *Temple Lumber Co.* v. *Miller*, 169 S.W. 2d 256 (Tex. Civ. App., 1943).

The judgment is reversed and the cause remanded.

We agree. HARRIS, C.J., and BYRD and HOLT, JJ.

HICKMAN, J., dissents.