WINROCK HOMES, INC. *v.* Gary DEAN and
FLETCHER, MILLER, DEAN AND ASSOCIATES, INC.

CA 84-314                                              684 S.W.2d 268

Court of Appeals of Arkansas
Division II
Opinion delivered February 20, 1985

*Shults, Ray & Kurrus,* by: *Robert Shults* and *Thomas Ray,* for appellant.

*Owens, McHaney & Calhoun,* by: *John C. Calhoun, Jr.,* for appellee.

JAMES R. COOPER, Judge. The appellant, Winrock Homes, Inc., appeals from the chancellor's award of damages against the appellees for their failure to accurately estimate the total number of square feet in the appellant's office building, designed for the appellants by the appellees. The appellees cross-appeal, arguing that the chancellor's award of damages was not proper, and that it was error to deny the appellees' motion to transfer the matter to circuit court. We reverse.

In the spring of 1978, the appellant began planning the construction of new corporate headquarters, to be located in the Protho Junction area of North Little Rock on property owned by the appellant which was partially occupied by a subsidiary of the appellant, Planters Lumber Company. After discussion with the appellees, the appellant decided on a two-story building. After the design and features were considered, the appellees came up with a construction cost per square foot of $40.00, which was rejected by the appellant's chief executive officer as being too high. Subsequently, over a period of time, employees of both the appellant and the appellees worked with the contractor in an effort to reduce the overall price of the building. While there was emphasis on the cost per foot, the negotiations with the general contractor continued on the basis of trying to arrive at an acceptable lump sum figure for the entire

project. Several months before the contractor and the appellant entered into a formal contract for the construction of the building, the building design was changed to square up the building, a change which finally resulted in an acceptable total cost for the project. From this point on, the changes made in design did not affect the size of the building, and the chancellor found that the appellant's chief executive officer was advised that the total square footage would be approximately 14,000. At this stage in the project, the appellant requested that the appellees calculate the exact number of square feet to be contained in the building. The appellees' employee who did the calculations made an error by adding a figure rather than subtracting it, not once, but twice. However, the appellant's employees who were involved in the project had drawn in, to scale, every piece of furniture, equipment, and machinery which was intended to occupy the building. The appellant was involved in home building, and its employees were apparently familiar with such matters.

The decision was made to construct the building for the lump sum cost of $533,000.00, and the appellant instructed the appellee to prepare a standard form contract for signature by the appellant and the contractor, inserting the total cost as noted above, and the total number of square feet, as erroneously calculated by the appellees, e.g., 15,546 square feet. The building was built, the appellant moved in, and, insofar as the record reflects, the appellant was completely satisfied with the building and its officers testified that the building conformed to the appellant's every anticipated need.

Some time later the appellant terminated its home construction business, causing a reduction in the square footage needed to house its corporate offices. As a result, the appellant decided to sell the building in question. A realtor was consulted, and the realtor quoted a price which was below the construction cost. When questioned as to the reason for this opinion as to low market value, the realtor observed that the property was located in a blighted or depressed area, some distance from other commercial areas, and the building contained only 14,000 square feet.

The chancellor found, and the record supports his finding, that even if the building had contained 15,546 square feet, rather than approximately 14,000, its market value would have been the same because of the depressed area in which it was located. The chancellor also concluded that the market value measure of damages would be the better one under these circumstances. Then the chancellor proceeded to award damages to the appellants based on the difference in the price per square foot actually paid times the number of square feet they did not receive. That is, a 15,546 square foot building, built at a cost of $533,000.00, would cost $34.29 per square foot; a 14,023 square foot building, built at the same cost, would cost $38.01 per square foot, for a net difference per square foot of $3.62. Then, the chancellor multiplied that difference times the differential in square footage to arrive at the damages he awarded, $5,665.56.

We hold that this award of damages was against the preponderance of the evidence as the chancellor had already found that the value of the building was not affected by the deficiency in square footage, or, stated another way, that any damages suffered by the appellant resulted from its choice of location rather than a relatively minor deficiency in square footage. Accordingly, we reverse the chancellor's award of damages to the appellant.

We note that the case was tried in equity because the appellant initially sought rescission of its contract with the appellees. The chancellor determined that the case was not a proper one for rescission because the appellant had moved into the building, occupied it for approximately three years, and was in all respects satisfied with it until discovering the discrepancy in square footage. The appellees moved to transfer the case to law, but the chancellor determined that under the clean-up doctrine he had jurisdiction to decide the question of damages. This point is raised by the appellee in their cross-appeal, but, because of our disposition of the case, we need not deal with it.

We agree that the market value approach to damages was appropriate in this case. The chancellor specifically found that the appellant had accepted the building, used it

for several years, and found it adequate for its corporate needs. Therefore, the cost measure of damages was inappropriate. The appellant cites us to D. Dobbs, *Law of Remedies*, Section 12.21 (1973), for the proposition that neither the cost rule in measuring damages nor the value approach are adequate remedies for the architect's breach and negligence. However, we determine that, from our reading of Dobbs, and the cases cited by the appellant, that this case presents facts which make the value measure of damages appropriate. Dobbs points out that the cost measure of damages contemplates the contractor (in this case the architect) paying the owner the value of replacing or repairing the defects which exist. Here, both sides admit that such a measure of damages would be inappropriate. The second measure of damages referred to by Dobbs is the market value rule, which awards the owner the difference in value between the building as constructed and the building as it would have been had the architect performed as expected. The appellant argues that this measure was not proper, but we agree with the chancellor that it would be the most desirable method for measuring damages. In *Carter* v. *Quick*, 263 Ark. 202, 209, 563 S.W.2d 461 (1978), the Arkansas Supreme Court discussed these two measures of damages, stating:

> It has been said that as a general rule the cost of correcting defects, rather than the difference in value, is the proper measure of damages where the correction would not involve unreasonable destruction of the work and the cost would not be grossly disproportionate to the results to be obtained. 13 Am. Jur. 2d 79, Building and Construction Contracts, Section 79. See also, 5 Corbin 491, Section 1089, where the author says that the cost of curing defects should be the measure whether the breach of the contract is large or small and that it should be applied to every case, except where the actual curing of the defects would cause unreasonable economic waste. . . .

We are of the opinion that to require the appellee to pay the cost of correcting the shortage in the number of square feet in the building would be inappropriate. The appellant

accepted, used, occupied, and was satisfied with, the building. To award damages to the appellant as it seeks, by awarding it $3.62 times the total square footage in the building, is to essentially apply the cost method, and would result in unfairness.

Having decided which measure of damages not to use, we now decide which measure to use. The appropriate measure of damages is the market value approach. Under this measure of damages, the appellant sustained no damages, since the only evidence in the record on this point supports the chancellor's finding that an additional 1,500 square feet would not have affected the market value of the building. Therefore, the appellant was not entitled to the award of any damages on the proof presented in this record.

Affirmed in part; reversed on cross appeal.

CRACRAFT, C.J., and CLONINGER, J., agree.